COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Kelsey and Chafin
Argued by teleconference

PATRICK TIMOTHY JEFFERS

v.     Record No. 0573-12-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE D. ARTHUR KELSEY
JUNE 18, 2013

FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
R. Bruce Long, Judge[*]

Brian W. Decker (Dusewicz, Soberick & Decker, on
brief), for appellant.

Craig W. Stallard, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Pursuant to a conditional guilty plea, Patrick Timothy Jeffers was convicted of eighteen

counts of possessing child pornography and one count of reproducing child pornography. On

appeal, Jeffers claims the trial court erred by not suppressing incriminating evidence obtained

pursuant to a search warrant. We disagree and affirm.

I.

In February 2011, investigators with the Internet Crimes Against Children Task Force

(ICAC) learned that child pornography had been posted on the Internet by a computer using a

particular IP address. Pursuant to a subpoena to the electronic service provider, ICAC

investigators discovered that the IP address was registered to Isla Loxley at 106 Barricks Mill

Road, Topping, Virginia. Deputies from the Middlesex County Sheriff's Office, an affiliate

---

[*] Judge Ray W. Grubbs presided over the suppression hearing and, after hearing the
evidence, denied Jeffers's motion. Judge R. Bruce Long later denied Jeffers's motion to rehear
the motion to suppress, accepted appellant's guilty pleas, and entered the final sentencing orders.

member of ICAC, went to that address to observe the layout of the property for purposes of preparing an affidavit for a search warrant. They observed a trailer and a small barn on the property. They also noticed a vehicle registered to Jeffers, a felon previously convicted of possessing child pornography. The officers then prepared a highly detailed affidavit seeking a search warrant.

A magistrate issued a search warrant directing the officers to search for evidence of child pornography on the property. Titled "SEARCH WARRANT — COMMONWEALTH OF VIRGINIA In re/V. Isla Loxley," the warrant specifically identified both of the buildings (the trailer and the barn) located at 106 Barricks Mill Road. The warrant authorized the following search:

> The residence of Isla Loxley. Located at 106 Barricks Mill Rd. Topping, Va 23189. It is a single wide trailer type dwelling. The home is white in color with brown trim, brown shutters, and a brown screened in porch. Located on the curtilage is a *brown barn in front of the home.* The address is posted on the property and this is to include *all persons*, vehicles, *or outbuildings* located within the curtilage.

App. at 83 (emphasis added). Officers arrived at 106 Barricks Mill Road to execute the warrant. The street address, marked by a single mailbox, identified the entire property — including both the trailer and the barn. The officers first went to the trailer and spoke with one of its residents, who told the officers that Jeffers lived in the barn.

Jeffers was detained by officers when he appeared at the door of the barn. An officer quickly performed a protective sweep of the barn to determine the existence of any threats. The officer then came out of the barn to talk to Jeffers. Jeffers said he received Internet service in the barn from "a physical wire that goes to the computer . . . from the trailer." Id. at 165. Loxley confirmed this with another officer on the scene. Jeffers also stated that "he had a porn addiction and an attraction to adolescents." Id. at 206.

The officers thereafter searched the trailer and the barn pursuant to the warrant. The search confirmed that a computer router inside the trailer supplied Internet access to the barn and that a computer in the barn contained child pornography. In the trial court, Jeffers pled guilty after the trial court denied his motion to suppress the incriminating evidence found during the search. The trial court accepted Jeffers's guilty pleas conditioned on his right to appeal the adverse ruling on his suppression motion. See Code § 19.2-254.

## II.

On appeal, Jeffers presents a limited argument. He does not challenge the validity of the search warrant or the magistrate's determination of probable cause. Jeffers concedes "the warrant was valid when it was obtained. It was valid based on the information provided by the officers to the magistrate and, quite frankly, any reasonable officer would have believed the warrant was valid." Oral Argument Audio at 19:08 to 19:18. Nor does Jeffers challenge the legality of the protective sweep of the barn. Id. at 5:58 to 6:05. Instead, Jeffers argues that the officers misinterpreted the scope of the warrant to include the barn. Under his reasoning, once the officers discovered that Jeffers lived in the barn, they could not search the barn because it was no longer within the scope of the warrant. We disagree.

The Fourth Amendment requires search warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." Police officers executing a particularized search warrant need not read its scope either narrowly or broadly, only reasonably. See United States v. Aljabari, 626 F.3d 940, 947 (7th Cir. 2010) (acknowledging "an executing officer must interpret a warrant's terms reasonably, but the officer need not give them the narrowest possible reasonable interpretation" (citation omitted)); McClendon v. Story Cnty. Sheriff's Office, 403 F.3d 510, 517 (8th Cir. 2005) (noting "[t]he concept of a 'narrow construction' is a convention of legal jurisprudence and would be an unworkable demand to place upon law enforcement");

United States v. Gorman, 104 F.3d 272, 274 (9th Cir. 1996) (applying "an objective test: would a reasonable officer have interpreted the warrant to permit the search at issue"); United States v. Traylor, 656 F.2d 1326, 1331 (9th Cir. 1981) (noting that narrowly interpreting the terms of a search warrant "would be reading it in a 'hypertechnical' manner" (quoting United States v. Federbush, 625 F.2d 246, 251 (9th Cir. 1980))).

Rather, the officers' interpretation must simply be "consistent with a reasonable effort to ascertain and identify the place intended to be searched," Maryland v. Garrison, 480 U.S. 79, 88 (1987), bearing in mind that "many situations which confront officers in the course of executing their duties are more or less ambiguous," and thus "room must be allowed for some mistakes on their part." Id. at 87 n.11 (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). To be excusable, of course, mistakes made by officers in the execution of warrants "must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." Id. (quoting Brinegar, 338 U.S. at 176). Even so, "[r]easonableness does not, by definition, entail perfection." United States v. Phillips, 588 F.3d 218, 227 (4th Cir. 2009); see also United States v. Patterson, 278 F.3d 315, 318 (4th Cir. 2002) (relying on principle that "the touchstone of the Fourth Amendment inquiry is 'sufficient probability, not certainty'" (quoting Garrison, 480 U.S. at 87)).

In this case, Jeffers contends the search warrant was based on the mistaken assumption that no one resided in Loxley's barn. He then argues that the executing officers, upon learning of their mistake, unreasonably searched the barn anyway. See Appellant's Br. at 11, 12. Because we find fault with Jeffers's first premise, we cannot accept his conclusion.

"Search warrants are not directed at persons; they authorize the search of '[places]' and the seizure of things." Zurcher v. Stanford Daily, 436 U.S. 547, 555 (1978) (alteration in original). Indeed, "[t]he critical element in a reasonable search is not that the *owner* of the

property is suspected of crime but that there is reasonable cause to believe that the specific *things* to be searched for and seized are located on the property to which entry is sought." Id. at 556 (emphasis added and internal quotation marks omitted); accord Mays v. City of Dayton, 134 F.3d 809, 814 (6th Cir. 1998) ("The specificity required by the Fourth Amendment is *not* as to the person against whom the evidence is to be used but rather as to the place to be searched and the thing to be seized." (emphasis in original)).

Here, the search warrant identified various items "tending to . . . give evidence . . . of child pornography," App. at 83, as the "specific things to be searched for and seized," Zurcher, 436 U.S. at 556, and named "106 Barricks Mill Rd.," App. at 83, as the "property to which entry is sought," Zurcher, 436 U.S. at 556. Thus, the scope of the search was "defined by the object of the search and the places in which there is probable cause to believe that it may be found." Garrison, 480 U.S. at 84 (quoting United States v. Ross, 456 U.S. 798, 824 (1982)). Police had traced child pornography to this address, but did "not know in which of the [buildings] the illegal transactions [were] taking place." Id. at 88 n.13 (noting this situation presents "quite different issues" from the case where it becomes evident "that a valid warrant describes too broadly the premises to be searched").

The search warrant did not state that the barn could be searched *only* if no one resided in it. The warrant identified the trailer as Loxley's residence, and then specifically identified the barn without mentioning whether anyone lived in it. The officers were not required to assume that the magistrate assumed the barn was unoccupied. Such a piling of one assumption upon another can hardly be squared with the straightforward reasonableness requirement of the Fourth Amendment. See United States v. Nichols, 344 F.3d 793, 798 (8th Cir. 2003) (approving search of "rear garage" identified in warrant even though officers discovered it was being rented out by

the home owner as a "separate apartment"). In short, the officers properly searched the barn because the warrant directed them to search the barn.

Finally, we acknowledge — but find unpersuasive — Jeffers's assertion that the warrant's phrase "within the curtilage" excluded by definition any structure on the property that was not used exclusively by Loxley. Appellant's Br. at 16, 17. It may well be, at least in principle, that the term "curtilage" would not implicitly expand the scope of a warrant to an *unspecified* outbuilding occupied by persons other than those living in the principal residence. See, e.g., Merrick v. State, 338 So. 2d 77, 78 (Fla. Dist. Ct. App. 1976) (holding the phrase "house . . . and the curtilage thereof" did not include a separate cottage not mentioned in the warrant). But neither precedent nor common sense requires police officers to refuse to execute a facially valid warrant — expressly directing them to search a *specific* outbuilding — simply because they discover that someone may be living in it. The implied limitations of the curtilage concept, whatever they may be, cannot rewrite a warrant that specifically identifies an outbuilding and commands that it be searched. There is, after all, "no inherent reason why a single warrant cannot be based upon information showing probable cause as to buildings with different occupants." 2 Wayne R. LaFave, Search and Seizure § 4.5(c), at 747 (5th ed. 2012).

These principles hold true in this case. The magistrate issued a warrant based upon a highly detailed affidavit linking child pornography to a unique IP address. The IP address led to a specific property located at 106 Barricks Mill Road, Topping, Virginia. It was entirely reasonable for the magistrate to order a search of all physical structures and "all persons"[1] at that

_____

[1] To the extent the warrant authorized searching persons, it did not limit its scope to Loxley, the resident of the trailer. The warrant authorized the search of "all persons" on the searchable property. App. at 83. Jeffers does not contest this aspect of the warrant's scope. And for good reason: "So long as there is good reason to suspect or believe that anyone present at the anticipated scene will probably be a participant, presence becomes the descriptive fact satisfying the aim of the Fourth Amendment." Felton v. Commonwealth, 56 Va. App. 43, 48 n.7, 690

address. App. at 83. For purposes of the search, it mattered not who posted the child pornography onto the Internet — only that someone did. Neither the text of the warrant nor the context of the underlying investigation limited the search to *unoccupied* outbuildings. It would not have mattered at all, therefore, if the magistrate had known the barn was occupied by Jeffers. To be sure, had the magistrate known Jeffers lived in the barn, there can be no doubt he still would have included the barn in the warrant, given that Jeffers had been previously convicted of possessing child pornography.

III.

The trial court did not err in refusing to suppress the evidence obtained by the officers pursuant to the search warrant.[2] We thus affirm Jeffers's convictions.

Affirmed.

---

S.E.2d 318, 321 n.7 (2010) (citation omitted), aff'd by unpublished order, No. 100756 (Va. Apr. 21, 2011); see also Morton v. Commonwealth, 16 Va. App. 946, 948, 951, 434 S.E.2d 890, 892, 893 (1993).

[2] Given our holding, we need not address the trial court's application of the good-faith doctrine under United States v. Leon, 468 U.S. 897 (1984), or the Commonwealth's argument that, under Herring v. United States, 555 U.S. 135, 141 (2009), the exclusionary rule would not apply even if we concluded that the execution of the search warrant violated Fourth Amendment principles.