COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Huff and Chafin
Argued by teleconference

UNPUBLISHED

MOSES ULYSESS HARRIS

MEMORANDUM OPINION[*] BY
v.      Record No. 1298-13-4                JUDGE GLEN A. HUFF
                                            OCTOBER 14, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Burke F. McCahill, Judge

Elizabeth Jean Lancaster, Senior Assistant Public Defender (Office
of the Public Defender, on briefs), for appellant.

Leah A. Darron, Senior Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Following a three-day jury trial in the Circuit Court of Loudoun County ("trial court"),

Moses Ulysess Harris ("appellant") was convicted on two counts of rape, in violation of

Code § 18.2-61, two counts of carnal knowledge, in violation of Code § 18.2-63, five counts of

custodial indecent liberties, in violation of Code § 18.2-370.1(A), and one count of

manufacturing child pornography, in violation of Code § 18.2-374.1(B). The trial court imposed

the jury's recommended sentences for a total incarceration period of two life sentences plus

seventy-five years. On appeal, appellant presents the following assignments of error:

> 1. The trial court erred in denying [appellant's] motion to
> suppress and subsequently allowing the introduction of the
> seized video to the jury, as the video seized exceeded the
> scope of the search warrant and the introduction of the
> video was highly prejudicial.
>
> 2. The trial court erred in denying [appellant's] motion to
> continue when the Commonwealth amended counts one

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

through nine of indictment 24172 in both substance and timeframe seven (7) days prior to trial, and the lack of a continuance denied [appellant] his right to a fair trial.

3. The evidence was insufficient, as a matter of law, to support each conviction as the Commonwealth failed to prove that [appellant] manufactured child pornography, and that [appellant] did have sexual intercourse with the alleged victim for each of the specified time frames enumerated in counts one through nine of indictment 24172.

For the following reasons, this Court affirms the judgments of the trial court.

I. BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'" Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (*en banc*) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

In July 2011, Virginia State Trooper Justin Huntley ("Huntley"), acting on an anonymous tip, began investigating appellant for possible Sex Offender Registry violations relating to his residency status. Appellant's registered address was in Purcellville, Virginia, but Huntley's investigation led him to conclude that appellant was living at a residence in Leesburg, Virginia with his girlfriend and her two minor children. Consequently, Huntley obtained two search warrants for the Leesburg residence.

The first search warrant authorized the search and seizure of "records, documents, and materials . . . in all forms including paper, photographic, mechanical, electronic, magnetic, and optical forms. Personal documents including but not limited to drivers licenses [sic], passports . . . [and] [p]ersonal belongings, including but not limited to mens [sic] clothing . . . that show indicia of [appellant] residing at the [Leesburg] residence." The second search warrant authorized the seizure of

[a]ll computer systems and digital storage media located therein. Those items are further described as any and all personal computer(s)/computing system(s), digital storage devices including, but not limited to computers, input and output devices, disks, diskettes, optical storage devices, central processing units, peripherals and all associate storage media for electronic data, together with all other computer-related operating equipment and materials, and other instrumentalities . . . .

The warrants were executed on November 15, 2011. During the search, an officer observed a video camera bag located next to a pile of laundry in the basement. The officer opened the bag and observed that it contained a video camera loaded with a JVC Hi-8 video cassette HMP 120 ("video cassette"). Using the screen on the camera, the officer played the video cassette, which depicted appellant having sexual intercourse with D.R., a minor female who resided at the Leesburg residence.

After being arrested for manufacturing child pornography, appellant moved to suppress the seizure of the video cassette. In the hearing on the motion to suppress, appellant argued that an unlabeled camera bag provided no indicia of appellant residing in the Leesburg residence, and therefore, its seizure exceeded the scope of the warrant. At the suppression hearing, the Commonwealth called John Mocello ("Mocello"), who qualified as an expert in the field of videography, to testify. Mocello testified that the video cassette seized in this case was a form of media that utilized magnetic particles on a tape that are rearranged during the production process.

The trial court held that the seizure of the video cassette fell within the scope of the first search warrant and "arguably" fell within the scope of the second. The trial court further described the video cassette as a brick in the wall of evidence that was relevant to proving appellant's residency.

Appellant was subsequently indicted on nine counts of rape. On February 26, 2013, seven days prior to appellant's trial, the trial court granted the Commonwealth's motion to

amend these nine indictments to coincide with D.R.'s date of birth – May 28th, 1996, the nature of the sex offense chargeable given the victim's age, and, with regards to counts eight and nine, the date of appellant's arrest.

In the first indictment, charging rape, the date of offense range was amended from "May 28, 2007 to on or about December 31, 2007" to "May 28, 2007 to on or about May 27, 2008." Similarly, regarding the second indictment, the date of offense range was amended from "January 1, 2008 to on or about December 31, 2008" to "May 28, 2008 to on or about May 27, 2009." The third indictment, which originally charged rape in violation of Code § 18.2-61, was amended to charge carnal knowledge in violation of Code § 18.2-63, and the date of offense range was amended from "January 1, 2009 to on or about December 31, 2009" to "May 28, 2009 to on or about May 27, 2010."

The fourth indictment, which originally charged rape, was also amended to charge carnal knowledge, and its date of offense range was amended from "January 1, 2010 to on or about December 31, 2011" to "May 28, 2010 to on or about May 27, 2011."

Indictments five through nine all originally alleged rape, but were amended to allege indecent liberties with a child by a custodian in violation of Code § 18.2-370.1(A). Additionally, the date of offense range for counts five through nine was amended to coincide with D.R.'s birthday rather than with each calendar year.

Appellant did not object to these amendments, but requested a continuance on the ground that he wanted additional time to reconsider his defense strategy. Appellant asserted that he felt the changes in the date ranges were "really significant" as they were not amended to lesser-included offenses, but rather require proof of different elements. Appellant also stated that he wanted more time to consider whether he needed additional witnesses. The Commonwealth responded by arguing that the nature of the charges was identical and the only real difference

- 4 -

was the age of D.R. for each sexual encounter. The Commonwealth admitted that some of the amendments added a custodial supervisory relationship as an element, but argued that the nature of the relationship between appellant and D.R. was the same from the case's inception. Appellant then conceded to the trial court that he was facing no surprise in regards to the evidence that the Commonwealth would present at trial. The trial court denied appellant's motion for a continuance, stating that appellant "has to articulate something other than a generalized desire to have more time." Nevertheless, the trial court stated that it would reconsider its ruling if appellant discovered additional witnesses he would be unable to call or some other particularized need for a continuance.

Appellant renewed his motion for a continuance on February 27, 2013. In his renewed motion, however, appellant acknowledged that he was unaware of any additional witnesses who might be useful to his defense if a continuance was granted. Instead, appellant argued there *could* be such witnesses. The trial court denied appellant's renewed motion on the ground that appellant "made no showing of a specific need for additional investigation to prepare a defense, nor did he suggest . . . there was testimony of witnesses or evidence in any other form which could be secured if a continuance was granted."

At trial, Erica Golden ("Golden") testified that she began dating appellant in 2006. Then, in 2007, appellant moved in with Golden and her two minor children, D.R. and L.R., at Golden's father's house in Leesburg, Virginia. From April 2007 to June 2012, Golden worked from 11:00 p.m. to 7:00 a.m. at Cornwall Hospital. Then, starting in June 2012, Golden began working from 10:00 p.m. to 6:00 a.m. at a 7-Eleven in Leesburg. Golden testified that there were many times when she would go to work leaving appellant at home with D.R.

D.R was eleven years old when appellant moved into the Leesburg residence. Appellant became involved with D.R.'s participation in athletics, and the two developed a close

- 5 -

relationship. Eventually, D.R. began referring to appellant as "dad." When the police interviewed D.R. regarding the recording of appellant engaged in sexual intercourse with D.R., she eventually admitted that the male in the video was appellant.

D.R. testified that the first time appellant had "vaginal intercourse" with her was when she was eleven years old and in the fifth grade. She recalled having sex with appellant "three or four times" while she was eleven years old. D.R. testified that when it first started happening, she did not think she should talk about it and she did not tell anyone because she did not trust adults. D.R. stated that the sexual intercourse would occur at night in the basement bedroom while her mother was at work.

Appellant stipulated that he was in jail from May 22, 2008 to November 18, 2008. D.R. testified that when she was twelve years old, appellant had sexual intercourse with her "pretty close" to when appellant was released from jail. While D.R. could not remember the specific number of times appellant had sexual intercourse with her, she testified that "it happened every year" and that the frequency of the encounters increased when she was thirteen years old. D.R. similarly testified that the frequency of the encounters increased when she was fourteen years old.

When D.R. was fifteen years old, she recalled one specific encounter with appellant where a video was made while the two engaged in sexual intercourse. D.R. testified that the video was appellant's idea and that appellant set the video up at the foot of her "parents" bed. D.R. further described that appellant turned on the video camera, they had sexual intercourse, and then she turned off the video. D.R. also testified that she had sexual intercourse with appellant between November 2011 and March 5, 2012, but she could not recall how many times because she "just didn't keep count." She also testified that she and appellant had sexual intercourse during the week of March 31, 2012, when appellant was arrested.

D.R. admitted that she helped appellant hide in a closet by putting items on top of him when Huntley came to the Leesburg residence on March 31, 2012 to arrest appellant. D.R. testified she helped hide him "because it's still my dad. And what he did was wrong, but I still wanted to help." A three-day jury trial was held from March 5 to March 7, 2013. The jury found appellant guilty of two counts of rape, two counts of carnal knowledge, five counts of custodial indecent liberties, and one count of manufacturing child pornography. On June 13, 2013, appellant was sentenced to a total of two life sentences plus seventy-five years. This appeal followed.

## II. ANALYSIS

### A. Motion to Suppress

On appeal, appellant first contends that the trial court erred by denying his motion to suppress the video cassette. Specifically, appellant argues the seizure of the video cassette exceeded the scope of the search warrants.

In reviewing the denial of a motion to suppress, appellant bears the burden on appeal to show that the trial court committed reversible error. Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980); see also Lebedun v. Commonwealth, 27 Va. App. 697, 711, 501 S.E.2d 427, 434 (1998). When considering appellant's argument, we are bound by the trial court's factual findings unless those findings are "plainly wrong or unsupported by the evidence," Pyramid Development, L.L.C. v. D & J Associates, 262 Va. 750, 753, 553 S.E.2d 725, 727 (2001), but we review the trial court's application of law *de novo*, Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005).

The Fourth Amendment requires search warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." "The permissible scope of a search is limited by the terms of the warrant pursuant to which it is conducted," Kearney v.

Commonwealth, 4 Va. App. 202, 204, 355 S.E.2d 897, 898 (1987), and "extends to every place where the object of the search may reasonably be found," Rosa v. Commonwealth, 48 Va. App. 93, 98, 628 S.E.2d 92, 94 (2006). The restriction "that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant that describes another." Marron v. United States, 275 U.S. 192, 196 (1927). A search warrant, however, is not a "constitutional straight jacket." United States v. Dornhofer, 859 F.2d 1195, 1198 (4th Cir. 1988) (citation and internal quotations omitted). Therefore, when interpreting search warrants, this Court must heed the United States Supreme Court's reminders to employ a "common sense and realistic" approach, United States v. Ventresca, 380 U.S. 102, 108 (1965), and avoid "'hypertechnical' scrutiny . . . lest police officers be encouraged to forgo the warrant application process altogether," United States v. Robinson, 275 F.3d 371, 380 (4th Cir. 2001) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)).

Indeed, "[p]olice officers executing a particularized search warrant need not read its scope either narrowly or broadly, only reasonably." Jeffers v. Commonwealth, 62 Va. App. 151, 156, 743 S.E.2d 289, 291 (2013) (citing United States v. Aljabari, 626 F.3d 940, 947 (7th Cir. 2010) (acknowledging "an executing officer must interpret a warrant's terms reasonably, but the officer need not give them the narrowest possible reasonable interpretation")); see also United States v. Stiver, 9 F.3d 298, 302 (3d Cir. 1993) ("Officers executing a search warrant are 'required to interpret it,'" but "they are 'not obliged to interpret [the warrant] narrowly.'" (quoting Hessel v. O'Hearn, 977 F.2d 299, 302 (7th Cir. 1992))). The "officers' interpretation [of a search warrant] must simply be consistent with a reasonable effort to ascertain and identify the place intended to be searched, bearing in mind that many situations which confront officers in the course of executing their duties are more or less ambiguous." Jeffers, 62 Va. App. at 156-57, 743 S.E.2d at 291-92 (quotations and citations omitted).

- 8 -

In the present case, the first search warrant authorized the seizure of "records, documents, and materials . . . in all forms including paper, photographic, mechanical, electronic, magnetic, and optical forms . . . that show indicia of [appellant] residing at the residence," and the second search warrant authorized the seizure of

> [a]ll computer systems and digital storage media located therein. Those items are further described as any and all personal computer(s)/computing system(s), digital storage devices *including, but not limited to* computers, input and output devices, disks, diskettes, optical storage devices, central processing units, peripherals and all associate storage media for electronic data, together with all other computer-related operating equipment and materials, and other instrumentalities . . . .

(Emphasis added).

Thus, the issue before us is whether, on these facts, the video cassette could reasonably fall within the scope of either or both of these warrants. Reasonably interpreting the language of the first search warrant, this Court holds that the video cassette fell within its scope and that it carries an indicia of appellant's residence. "The permissible scope of a search is limited by the terms of the warrant pursuant to which it is conducted," Kearney, 4 Va. App. at 204, 355 S.E.2d at 898, and in the present case, the search warrant authorized the seizure of "records, documents, and materials . . . in all forms including . . . magnetic, and optical forms . . . that show indicia of [appellant] residing at the residence." As such, the police were permitted to search for digital storage devices and electronic data tending to indicate that appellant resided at the Leesburg residence. The video cassette, as a form of magnetic media, reasonably falls within the express terms of the search warrant.

Additionally, the video cassette and the camera are items of personal significance that a person would likely keep at the place where he resides. This is particularly true of a home video depicting the subject of the search engaged in intercourse with a minor. See Powell v. Commonwealth, 27 Va. App. 172, 178, 497 S.E.2d 899, 901 (1998) (noting that illegal drugs are

- 9 -

objects "'of significant value,'" making it unlikely that they were carelessly left somewhere); see also United States v. Zenone, 1998 U.S. App. LEXIS 18561, *7-8 (4th Cir. 1998) (holding that video tapes found in a closed and locked basement "[were] plainly authorized [to be seized] by the warrant . . . given their location and tendency to link the defendant to the place to be searched"). As such, the seized video cassette carried an indicia that appellant resided at the location it was found. While the video cassette alone may be insufficient to establish appellant's residence, it forms a brick in a wall of evidence obtained as a result of the search.

Accordingly, this Court holds that the trial court did not err by denying appellant's motion to suppress the video cassette.

### B. Motion to Continue

Appellant next asserts the trial court erred by denying his motion to continue. Specifically, appellant argues a continuance should have been granted because when the trial court granted the Commonwealth's motion to amend the indictments, the nature and character of the offenses changed, including changes to the essential and material elements of proof.

"'The decision to grant a motion for a continuance is within the sound discretion of the [trial] court and must be considered in view of the circumstances unique to each case.'" Ortiz v. Commonwealth, 276 Va. 705, 722-23, 667 S.E.2d 751, 761-62 (2008) (quoting Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34, 645 S.E.2d 261, 265 (2007)). An appellate court can reverse the denial of a motion for a continuance only if the trial court committed an "abuse of discretion" *and* thereby caused "resulting prejudice." Id. at 722, 667 S.E.2d at 762. "This 'two-pronged' test . . . has long been the standard under Virginia practice." Cooper v. Commonwealth, 54 Va. App. 558, 565, 680 S.E.2d 361, 365 (2009) (quoting Lebedun, 27 Va. App. at 712, 501 S.E.2d at 434).

Satisfying both prongs of the test is "essential to reversal." Butler v. Commonwealth, 264 Va. 614, 621, 570 S.E.2d 813, 817 (2002) (citations omitted). "The absence of one renders inconsequential the presence of the other." Bolden v. Commonwealth, 49 Va. App. 285, 290, 640 S.E.2d 526, 529 (2007). Therefore, this Court "cannot reverse if [appellant] 'has shown no prejudice resulting from what he claims was an abuse of discretion'" in denying his motion for a continuance. Id. (quoting Quintana v. Commonwealth, 224 Va. 127, 135, 295 S.E.2d 643, 646 (1982)). Additionally, prejudice "'may not be presumed; it must appear from the record.'" Id. (quoting Lowery v. Commonwealth, 9 Va. Ap. 304, 307, 387 S.E.2d 508, 510 (1990)).

In Ortiz, the Commonwealth moved to amend the indictment against Ortiz after it had concluded its case-in-chief. 276 Va. at 723, 667 S.E.2d at 762. After granting the Commonwealth's motion, the trial court denied Ortiz's motion for a continuance. The Supreme Court held that the trial court did not abuse its discretion by denying the motion for a continuance because Ortiz "'made no showing of a specific need for additional investigation to prepare . . . a defense.' Nor did he 'suggest to the trial court that there was testimony of witnesses, or evidence in any other form, which he could secure if a continuance was granted.'" Id. (citations omitted). The Supreme Court concluded that "[m]ere reference of a need for more time to prepare is insufficient to show that a continuance was improperly denied." Id.

In the present case, appellant has failed to prove that he was prejudiced by the denial of his motion for a continuance. Specifically, appellant failed to particularize any evidence or witnesses that he might be able to secure through the benefit of a continuance. Rather, appellant stated that he was unaware of any additional witnesses or evidence that would be useful to the defense if a continuance is granted. Thus, appellant failed to demonstrate that he was prejudiced by the denial of his motion to continue because he "'made no showing of a specific need for additional investigation to prepare . . . a defense.'" Ortiz, 276 Va. at 723, 667 S.E.2d at 762

- 11 -

(citation omitted).  Appellant is therefore left only with his assertions that more time is needed to prepare, which are "insufficient to show that a continuance was improperly denied."  Id.

Accordingly, this Court holds that the trial court did not abuse its discretion by denying appellant's motion for a continuance.

### C.  Sufficiency of Evidence

Lastly, appellant challenges the sufficiency of the evidence to sustain his convictions. Specifically, in regards to the two counts of rape, two counts of carnal knowledge, and five counts of custodial indecent liberties with a minor, appellant argues that D.R.'s testimony was inherently incredible and cannot support these findings of guilt.  Similarly, in regards to the count of manufacturing child pornography, appellant argues that D.R.'s testimony is insufficient, by itself, to support appellant's conviction.

In a challenge to the sufficiency of the evidence, "we 'presume the judgment of the trial court to be correct,' and 'will not set it aside unless it is plainly wrong or without evidence to support it.'"  Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (quoting Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992); Dodge v. Dodge, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986)).  The reviewing court, under this standard, does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (citation omitted).  Instead, the reviewing court asks whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319 (emphasis in original).

"Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify."  Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993).  Therefore, this Court will not disturb the fact finder's determination of the credibility of witness testimony unless, "as

- 12 -

a matter of law, the testimony is inherently incredible." Walker v. Commonwealth, 258 Va. 54, 70-71, 515 S.E.2d 565, 575 (1999).

In regards to the two counts of rape, two counts of carnal knowledge, and five counts of custodial indecent liberties with a minor, the jury heard D.R. testify that appellant had "vaginal intercourse" with her three or four times when she was eleven. She further testified that when she was twelve, appellant began having vaginal intercourse with her after his release from prison. Additionally, D.R. testified that appellant continued to have vaginal intercourse with her every year, with increasing frequency after she turned thirteen. Similarly, in regards to the count of manufacturing child pornography, the jury heard D.R. testify that appellant set up the camera, they engaged in vaginal intercourse, and D.R. turned off the camera. After hearing this testimony, the jury convicted appellant of all charges. Nevertheless, appellant argues that this Court should hold that D.R.'s testimony is inherently incredible, as a matter of law, because the "lack of detail and specificity are contrary to human experience."

For testimony to be inherently incredible, as a matter of law, "it 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" Cardwell v. Commonwealth, 209 Va. 412, 414, 164 S.E.2d 699, 701 (1968) (quoting Burke v. Scott, 192 Va. 16, 23, 63 S.E.2d 740, 744 (1951)). In other words, it must be "so contrary to human experience as to render it unworthy of belief." Fisher v. Commonwealth, 228 Va. 296, 300, 321 S.E.2d 202, 204 (1984).

Appellant first argues that D.R.'s testimony is unworthy of belief because she could not remember specific details about *when* each sexual encounter occurred. While it is true that D.R. was unable to recall specific dates regarding each instance appellant had vaginal intercourse with her, this is not so contrary to human experience as to render it unworthy of belief. Rather, it is

- 13 -

reasonable for D.R. to remember that appellant had vaginal intercourse with her multiple times, with increasing frequency, since she was eleven years old without remembering the specific dates of each occurrence years later.

Additionally, appellant argues that D.R. should be considered unworthy of belief because "of the impeachments to her testimony." As the Supreme Court has explained, however,

> [w]hen the law says that it is for the trier of fact to judge the credibility of a witness, the issue is not a matter of degree. So long as a witness deposes as to facts, which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached by contrary statements affects only the witness' credibility . . . [and] the weight and sufficiency of the testimony. If the trier of the facts sees fit to base the verdict upon that testimony, there can be no relief in the appellate court.

Simpson v. Commonwealth, 199 Va. 549, 557-58, 100 S.E.2d 701, 707 (1957); see also Burke, 192 Va. at 23-24, 63 S.E.2d at 744.

Finally, appellant argues that D.R. should be considered unworthy of belief because her testimony lacked corroboration. As

> sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished. Consequently rape and attempted rape may be sustained solely upon the testimony of the victim. There is no requirement of corroboration.

Garland v. Commonwealth, 8 Va. App. 189, 191, 379 S.E.2d 146, 147 (1989); see also Fisher, 228 Va. at 299, 321 S.E.2d at 203 ("Persuasive authority also extends [this rule] to prosecutions for sodomy *and other sexual offenses*." (emphasis added)). Therefore, in the present case, corroboration of D.R.'s testimony is not needed to uphold appellant's convictions, and appellant's argument fails.

Accordingly, this Court affirms appellant's convictions because D.R.'s testimony is not so inherently incredible as to render it unworthy of belief.

## III.  CONCLUSION

For the foregoing reasons, this Court affirms the judgments of the trial court.

<u>Affirmed.</u>