COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Chief Judge Decker, Judges Malveaux and Raphael
Argued by videoconference


YOUSSEF HOBALLAH
                                              MEMORANDUM OPINION* BY
v.        Record No. 1412-23-1          JUDGE MARY BENNETT MALVEAUX
                                                    JUNE 24, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

Ivan Fehrenbach (B. Thomas Reed, on brief), for appellant.

Jason D. Reed, Senior Assistant Attorney General (Jason S. Miyares,
Attorney General; Linda R. Scott, Senior Assistant Attorney General,
on brief), for appellee.


Following a conditional *Alford* guilty plea,[1] the trial court convicted Youssef Hoballah

("appellant") of perjury, in violation of Code § 18.2-434.  On appeal, he argues that the trial court

erred in denying his motion to suppress because the search warrant affidavit did not provide

probable cause to search audio files stored on the phone, and because police exceeded the scope of

the search warrant by listening to his phone calls.  For the following reasons, we affirm.

BACKGROUND

"On appeal from a denial of a suppression motion, we must review the evidence in the

light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences."

*Slayton v. Commonwealth*, 41 Va. App. 101, 103 (2003) (quoting *Barkley v. Commonwealth*, 39

Va. App. 682, 687 (2003)).

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

Search Warrant

In October 2020, appellant was tried for stalking, second offense within five years; stalking with a protective order; violation of a protective order; use of a tracking device; and aggressive driving. According to the stipulation of facts attached to appellant's plea agreement for the instant offense, counsel for appellant "introduced [appellant's] cell phone into evidence" at the October 2020 jury trial.[2] The jury trial ended in a hung jury, and the trial court declared a mistrial on October 21, 2020. The trial court's clerk's office kept the cell phone in its possession.

On October 23, 2020, Detective Alex Benshoff of the Norfolk Police Department completed an affidavit for a search warrant for appellant's cell phone. On the affidavit, the things to be searched for were described as "[a]ny and all electronic files, location tracking data, phone call logs, text messages, emails, photographs, videos, notes, audio files, and other data contained within the [cell phone] related to violation of . . . Code § 18.2-60.3(B) Stalking (2nd offense)."

In reciting the material facts constituting probable cause to search the cell phone, Benshoff related that on July 27, 2019, K.J.,[3] appellant's estranged wife, saw a car belonging to appellant drive past the location where she was temporarily residing. K.J. was on the front lawn, and appellant "began walking towards her aggressively." K.J. went inside the house, and, while watching appellant out of the window, saw him reach under the driver's side of her car. Law

---

[2] We note that the Commonwealth has not argued, either below or on appeal, that appellant's introduction of his entire cell phone into evidence meant that he no longer had a reasonable expectation of privacy in the device. "[A] person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Carpenter v. United States*, 585 U.S. 296, 308 (2018) (quoting *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979)). "That remains true 'even if the information is revealed on the assumption that it will be used only for a limited purpose.'" *Id.* (quoting *United States v. Miller*, 425 U.S. 435, 443 (1976)).

[3] We use K.J.'s initials to protect her privacy.

enforcement obtained warrants for violation of a protective order and stalking. The next day, July 28, 2019, Officer T. Humphries of the Norfolk Police Department saw appellant approach the home where K.J. was residing. The officer informed appellant he was under arrest, at which point appellant fled. Shortly after, appellant's car was seen nearby the residence; appellant did "not have a residential address in the area where his vehicle was located." Benshoff found a GPS tracking device attached under the driver's side of K.J.'s car, located where she had seen appellant reaching the previous day. A protective order was in place against appellant that ordered no contact with K.J. and was active until July 23, 2020.

In addition, the search warrant affidavit specified that the cell phone "was purported to have been used by [appellant] during the period that Stalking (2nd) Offense occurred during July 2019." Benshoff stated that "[b]ased on this affiant[']s experience mobile phones contain data to include location tracking, phone call logs, text messages, emails, photographs, videos, notes, audio files, and other data which could be evidence related to Stalking (2nd Offense)." He further stated that "[b]ased on credible witness testimony of [K.J.] and the actions and observations of Officer T. Humphries this applicant believes that there is digital evidence stored within the grey in color LG Mobile Phone belonging to [appellant] related to Stalking."

On October 23, 2020, Benshoff was issued a search warrant for appellant's cell phone for

> [a]ll stored electronic data, residing on aforementioned cellphone to include all media and photographic media, including any electronic, magnetic, optical or storage facilities such as any video material and all photographs, text messages, call logs, passwords, personal unblocking code, contact lists, incoming/outgoing call logs, to include any data on device SIM cards, all location information including estimated or known locations.

The search warrant noted that it was "issued in relation to . . . Violation of Virginia State Code 18.2-60.3 to wit: Stalking."

Benshoff seized the cell phone that day from the clerk's office of the trial court, and then delivered it to Detective Christopher Beason of the Norfolk Police Department. On October 27, 2020, Beason used a device to make a digital copy of everything contained on appellant's cell phone. After copying the items contained on the cell phone, the device produced a report listing what type of media and how much of each category was stored on the phone. Benshoff provided a copy of the downloaded contents of appellant's cell phone to the Commonwealth's Attorney's office.

Perjury Offense

After the October 2020 jury trial ended in a mistrial, on December 19, 2020, appellant pleaded guilty to stalking, second offense; stalking with a protective order; and violation of a protective order. The plea agreement provided that the trial court would take the matter under advisement for two years and the two felonies would be reduced to misdemeanors if appellant was of good behavior and on supervised probation for that period, had no contact with K.J., and did not enter Virginia Beach or Norfolk.

Appellant's probation officer filed a major violation report on January 29, 2021, alleging that appellant had been seen in Norfolk and had been stalking K.J. the prior week, on January 22. The trial court conducted a probation violation hearing on April 29 and 30, 2021. On April 29, the first day of the hearing, appellant "produced a recorded phone call and stated on record, under oath, that the phone call took place in January of 2021." Appellant testified that "what was stated in the call required him to return to Norfolk in violation of the terms of his probation," asserting that "he had to return to Norfolk because the father of [K.J.'s] child allegedly called him and threatened him."

The next day, on April 30, 2021, Beason used a filter to obtain the contents of appellant's cell phone for a 24-hour period, the day of July 24, 2019. That same day, at the second day of

the probation violation hearing, the Commonwealth's attorney cross-examined appellant about the recorded phone call appellant had produced, and appellant again, under oath, stated that the phone call occurred in January 2021. Beason testified at the hearing that the recorded call actually occurred on July 24, 2019.[4] Beason accessed the call from the digital file containing the contents of appellant's cell phone. Beason authenticated the extraction report from appellant's cell phone, which was admitted into evidence at the hearing. Beason, or an employee of the Commonwealth's Attorney's office, had listened to the phone call prior to the hearing. Beason also testified at the probation violation hearing that the extraction report about the phone call in question was from "the data file section of the primary report, audio files area."[5]

In August 2021, a grand jury indicted appellant for perjury committed during his probation violation hearing. Appellant subsequently moved the trial court to suppress "any 'audio file' evidence recovered from [appellant's] mobile phone." He argued that "the inclusion of 'audio files' (which are actual recorded telephone conversations) in the 'things or persons to be searched for' in the Affidavit for Search Warrant, as prepared by Detective Benshoff, was not supported by probable cause to believe they would reveal [appellant's] location data," and further asserted that the affidavit did not contain probable cause to believe "that the substance of those telephone calls could be related to the crimes of stalking and violation of protective orders." Appellant also contended that eliminating "the term 'audio files' from the Search Warrant itself precluded the officer executing the search warrant, or any representative of the Commonwealth, from listening to telephone conversations recovered from [appellant's] mobile

_____

[4] Although unclear from the record, it appears that, at some point after Beason made a digital copy of the contents of the cell phone, appellant's phone was returned to his possession, and that is how appellant was able to produce the recorded phone call that he claimed occurred in January 2021.

[5] A transcript of the probation violation hearing is not included in the record on appeal; however, this part of Beason's testimony was included in the trial court's letter opinion.

phone by extraction software, and that the 'good faith' exception does not apply to anyone having done so."

At the suppression hearing, Benshoff testified that, while completing the search warrant, his understanding was that an "audio file" was "any audio that's stored on the phone," and was broader than "just recorded phone calls." Benshoff testified that he understood "any and all electronic files" "[t]o include recorded phone calls, audio files, pictures, GPS -- anything that may be in that phone." Beason testified that "'all stored electronic data residing on the aforementioned cell phone, to include all media and photographic media,' media is a broad term that is used in our industry for any type of digital recording." He interpreted "media" to include "[a]nything digital on the phone, whether it was a recording or a log."

The trial court denied the motion to suppress. Pertinent to this appeal, in a letter opinion, the court found that the search warrant was sufficiently broad to permit a search of phone calls contained on appellant's cell phone.[6] The court concluded, "That the magistrate omitted the words 'audio files' in what he authorized to be searched does not mean the magistrate excluded audio recordings from the search warrant," when the warrant authorized a search of "[a]ll stored electronic data . . . to include all media and photographic media." This appeal followed.

ANALYSIS

On appeal, appellant challenges the search warrant on two grounds: that the removal of the term "audio files" from the search warrant precluded law enforcement from listening to phone conversations recovered from appellant's cell phone and that the magistrate lacked

---

[6] In its letter opinion, the trial court also rejected appellant's argument, made below but not on appeal, that the warrant constituted a general warrant. The court further held that, even if it did assume that the warrant was overbroad, the good-faith exception applied. The trial court did not specifically address appellant's argument regarding probable cause in the letter opinion.

probable cause to believe that phone calls extracted from his cell phone contained location data relevant to the stalking offense.

"In appealing a trial judge's denial of a motion to suppress evidence seized during a warrant search, [appellant] bears the burden of showing that the ruling constituted reversible error." *Cunningham v. Commonwealth*, 49 Va. App. 605, 612 (2007). "This Court is 'bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" *Daniels v. Commonwealth*, 69 Va. App. 422, 431 (2018) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)). But "an appellant's 'claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal.'" *Id.* (quoting *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018)). In addition, "[a] judicially issued search warrant is entitled to a 'presumption of validity,' and a defendant challenging a resulting search bears the burden of rebutting that presumption." *Harvey v. Commonwealth*, 76 Va. App. 436, 461 (2023) (quoting *Brown v. Commonwealth*, 68 Va. App. 517, 524 (2018)).

## I. Scope of Search Warrant

Appellant argues that the trial court erred in denying his motion to suppress because the lack of the term "audio files" from the search warrant itself prevented law enforcement from listening to cell phone conversations recovered from the phone.

When a warrant is obtained, "the scope of a search is limited by the terms of the authorizing warrant." *Rosa v. Commonwealth*, 48 Va. App. 93, 98 (2006). "The Fourth Amendment requires search warrants to 'particularly describ[e] the place to be searched, and the persons or things to be seized.'" *Jeffers v. Commonwealth*, 62 Va. App. 151, 156 (2013) (alteration in original) (quoting U.S. Const. amend. IV). But "[p]olice officers executing a

particularized search warrant need not read its scope either narrowly or broadly, only reasonably." *Id.* "[T]he officers' interpretation must simply be 'consistent with a reasonable effort to ascertain and identify the place intended to be searched.'" *Id.* (quoting *Maryland v. Garrison*, 480 U.S. 79, 88 (1987)).

We find no merit in appellant's assertion that the lack of the term "audio files" from the search warrant precluded Detective Beason, or any representative of the Commonwealth's Attorney's office, from listening to audio conversations stored on his phone.

In this case, the affidavit completed by Detective Benshoff described the things to be searched for as "[a]ny and all electronic files, location tracking data, phone call logs, text messages, emails, photographs, videos, notes, *audio files*, and other data contained within the [cell phone]." (Emphasis added). The warrant issued by the magistrate permitted police to search

> *[a]ll stored electronic data*, residing on aforementioned cellphone *to include all media and photographic media*, including any electronic, magnetic, optical or storage facilities such as any video material and all photographs, text messages, call logs, passwords, personal unblocking code, contact lists, incoming/outgoing call logs, to include any data on device SIM cards, all location information including estimated or known locations.

(Emphases added). Here, the extraction report containing the phone call in question was from "the data file section of the primary report, audio files area." It was reasonable for law enforcement to conclude that a warrant authorizing police to search "[a]ll stored electronic data, residing on aforementioned cellphone to include all media and photographic media" included any audio files contained in the electronic data of the cell phone. Therefore, we conclude that the search did not exceed the scope of the warrant.

II. Probable Cause / Good-Faith Exception

Appellant also argues that the trial court erred in denying his motion to suppress because the magistrate lacked probable cause to believe that recorded cell phone conversations extracted from his phone contained location data relevant to the stalking offense. He asserts that there was no evidence in the affidavit that would cause the magistrate to conclude that there was a fair probability that evidence of the crime of stalking would be found in appellant's cell phone conversations.

We do not, however, address this argument on appeal. Instead, we conclude that the best and narrowest ground to resolve this case is to hold that we are unable to determine whether the good-faith exception applies due to the absence of an indispensable transcript in the record. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

Generally, "[w]here law enforcement officers illegally search private premises or seize property without probable cause in violation of the Fourth Amendment, the illegally seized evidence will be excluded from evidence [in a criminal prosecution]." *Colaw v. Commonwealth*, 32 Va. App. 806, 810 (2000). But in *United States v. Leon*, 468 U.S. 897 (1984), "the United States Supreme Court established a good-faith exception to the exclusionary rule, applicable when a search is conducted pursuant to a warrant subsequently determined to be defective for Fourth Amendment purposes." *Ward v. Commonwealth*, 273 Va. 211, 222 (2007). "The purpose of the exclusionary rule historically was to deter police misconduct rather than to punish the errors of magistrates." *Derr v. Commonwealth*, 242 Va. 413, 422 (1991). Because "[t]he deterrent effect of the exclusionary rule 'is absent where an officer, acting in objective good

faith, obtains a search warrant from a magistrate and acts within the scope of the warrant,'"[7] *Janis v. Commonwealth*, 22 Va. App. 646, 653 (quoting *Derr*, 242 Va. at 422), *aff'd en banc*, 23 Va. App. 696 (1996), evidence seized pursuant to an invalid search warrant "is nevertheless admissible if the officer executing the warrant reasonably believed that the warrant was valid," *Lanier v. Commonwealth*, 10 Va. App. 541, 547 (1990). "'[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule[,]' . . . 'to deter police misconduct.'" *Polston v. Commonwealth*, 255 Va. 500, 503 (1998) (quoting *Leon*, 468 U.S. at 916, 918).

> There are four circumstances, however, where an officer cannot have an objectively reasonable belief that probable cause exists for the search and suppression is an appropriate remedy: "(1) Where the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit 'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid."

*Lane v. Commonwealth*, 51 Va. App. 565, 572 (2008) (quoting *Cunningham*, 49 Va. App. at 618-19).

In addition, "we can, and should, 'look to the totality of the circumstances including what [the executing police officers] knew but did not include in [the] affidavit' when conducting the good-faith analysis." *Adams v. Commonwealth*, 275 Va. 260, 270 (2008) (alterations in original) (quoting *United States v. Martin*, 833 F.2d 752, 756 (8th Cir. 1987)).

> While the totality of the circumstances does not include the subjective beliefs of police officers who seize evidence pursuant to a subsequently invalidated search warrant, *see Leon*, 468 U.S. at 922 n.23, it does, at a minimum, take into account information

---

[7] As noted above, we conclude that the search of the cell phone for appellant's recorded phone conversations was within the scope of the warrant.

known to police officers that was not included in the search warrant affidavit. To confine the good-faith analysis to the facts set forth in the four corners of the search warrant affidavit (even if the analysis also considers additional information presented to the magistrate) changes the focus of the inquiry from the objective good faith of a reasonably well-trained police officer to a magistrate's determination of probable cause. It also leads to the exclusion of competent evidence in the prosecution's case in chief even though reasonably well-trained police officers acted in objective good-faith reliance on a search warrant. This approach undermines the purposes of both the exclusionary rule and its good-faith exception.

*Id.* at 273.

Here, we are unable to engage in a totality of the circumstances analysis of whether good faith existed because the record does not contain the information known to Benshoff at the time he obtained the search warrant.

The lack of a transcript does not prevent this Court from addressing an appellant's assignment of error "if the record on appeal is sufficient in the absence of [a] transcript to determine the merits of the appellant's allegations." *Salmon v. Commonwealth*, 32 Va. App. 586, 590 (2000) (alteration in original) (quoting *Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986)). Conversely, "[w]hen the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by such omission will not be considered." Rule 5A:8(b)(4)(ii). "Whether the record is sufficiently complete to permit our review on appeal is a question of law subject to our *de novo* review." *Bay v. Commonwealth*, 60 Va. App. 520, 529 (2012).

Appellant timely filed a partial transcript of the suppression hearing. This transcript includes testimony from Benshoff and Beason. However, the trial court's letter opinion indicates that the court relied on three additional transcripts in making its decision on the motion to suppress: (1) appellant's direct examination and part of his cross-examination at the October 2020 jury trial; (2) the guilty plea hearing held in December 2020; and (3) appellant's cross-

examination and Beason's testimony at the second day of the probation violation hearing held on April 30, 2021. These transcripts are not a part of the record on appeal.

In its letter opinion, the trial court stated that "Benshoff accurately stated in his [search warrant] affidavit that the cellphone 'was purported to have been used by [appellant] during the period of Stalking (2nd Offense) occurred during July 2019.'" The court then cited to a portion of the October 2020 jury trial transcript to support its finding that Benshoff "accurately" stated in the affidavit that the cell phone was used during the period of alleged stalking. The court further stated:

> based upon the nature of stalking and what he could have learned from the trial, Benshoff certainly would have been reasonable in requesting a search of [appellant's] cellphone's location data, call logs, text messages, emails, *contents of telephone calls*, social media applications, and photographs and videos of his estranged wife, her residence, her place of employment, and her automobile.

(Emphasis added).

The record does not contain the transcript of the October 2020 jury trial that would allow us to evaluate whether, under the totality of the circumstances, including what was known to Benshoff at the time he obtained the warrant, the detective had an objectively reasonable belief that the magistrate had probable cause to issue the search warrant. A transcript or written statement of facts pertaining to the October 2020 jury trial is thus "indispensable to the determination of the case." *Bay*, 60 Va. App. at 528 (quoting *Turner*, 2 Va. App. at 99). As such, because we cannot determine on this record whether the good-faith exception would apply, we affirm the trial court's decision due to the lack of an indispensable transcript.[8] "We have

---

[8] In fact, appellant himself suggests that the October 2020 jury trial transcript might contain evidence pertinent to our determination on appeal. On brief, appellant argues that there was no fair probability that evidence of stalking would be found in his cell phone conversations,

> unless and to the extent that the Commonwealth's victim or any other witness testified that one or more mobile phone

many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of." *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993) (quoting *Justis v. Young*, 202 Va. 631, 632 (1961)). "If the appellant fails to do this, the judgment will be affirmed." *Id.* (quoting *Justis*, 202 Va. at 632).

### III.  CONCLUSION

We hold that the trial court did not err in denying appellant's motion to suppress. Accordingly, we affirm the judgment of the trial court.

*Affirmed.*

---

conversations between [appellant] and any other person indicated where [appellant] was when those conversations took place. Counsel for [appellant] is not aware of any such testimony or evidence at [appellant's] jury trial to that effect.

While counsel is "not aware of any such testimony," we cannot rely on this statement on appeal. "An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court.  We may act only upon facts contained in the record." *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993).