[No. H021456. Sixth Dist. Mar. 21, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDRIC JACOB GOTFRIED, Defendant and Appellant.

**COUNSEL**

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias, Lisa H. Ashley Ott, and Ayana Cuevas, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELIA, J.**—After his motion to suppress evidence (Pen. Code, § 1538.5) was denied, on January 20, 2000, defendant Fredric Jacob Gotfried pleaded no contest to one count of cultivating marijuana (Health & Saf. Code, § 11358). On March 8, 2000, the trial court dismissed a related count of possession of marijuana for sale (Health & Saf. Code, § 11359), suspended imposition of sentence, and placed defendant on three years' formal probation with various terms and conditions. The trial court granted defendant a certificate of probable cause on March 31, 2000, which was designated as the operative notice of appeal.

Defendant argues on appeal that the search warrant authorizing law enforcement to use a thermal imaging device to scan his residence was not supported by probable cause. We agree, and therefore reverse the judgment.

### FACTS AND PROCEDURAL HISTORY

On September 24, 1998, Deputy Sheriff Ruben A. Garcia asked the trial court to issue a search warrant authorizing the use of a thermal imaging device on a single-wide mobilehome located at 70450 Chadwick, No. 21, in Lockwood. The request was based upon an affidavit signed by Garcia that provided:

"Affiant is a Deputy Sheriff for the Monterey County Sheriff's Office and has been so employed since 1982. Since December, 1993, affiant has been assigned full-time to the County of Monterey Marijuana Eradication Team which specifically targets the detections, arrest and prosecution of marijuana growers.

"Affiant has received formal training in the investigation of narcotics violations, including special classes from the Department of Justice, and Drug Enforcement Administration. Affiant has also had extensive in-service training from the Sheriff's Office and veteran deputy sheriffs who have specialized in narcotics law enforcement for many years. Affiant has participated in the investigation, surveillance, arrest, and search for contraband in numerous cases involving marijuana, cocaine, and heroin. Affiant has

assisted the Monterey County Sheriff's Office Special Enforcement Detail in the eradication of several marijuana gardens and was a primary investigator in the detection, arrest, and prosecution of a case involving a major indoor marijuana garden of 492 plants.

"Affiant has also read various written materials concerning narcotic law violations, especially relating to the cultivation and sales of marijuana. Affiant has further spoken with experts in the field as well as drug users concerning the methods of operation of marijuana growers and sellers and sellers of other illicit drugs.

"Based on training and experience, affiant is thoroughly familiar with the manner in which marijuana is grown, harvested, packaged, sold and used. Through training and experience, affiant is familiar with the appearance and odor of marijuana in both its live and dried forms.

"Your affiant has had formal training in cannabis aerial observation from the Department of Drug Enforcement Administration and has observed 65 cannabis gardens resulting in the seizure of 11,120 cannabis plants.

"Your affiant has had formal training in Thermal Imagery from the Department of Drug Enforcement Administration, and has been the investigating officer in 8 investigations of indoor marijuana cultivation cases involving the use of the Thermal Imager. Your affiant has testified as an expert in the use of the Thermal Imager in the detection of indoor marijuana cultivation.

"On 9-23-98 your affiant received the following information from an anonymous informant. He/She stated that Frederic [sic] Gotfried was growing marijuana at his place of residence, that being 70450 Chadwick, space #21, Jolon Road, Lockwood in the County of Monterey.

"He/She told affiant Frederic [sic] Gotfried has been growing marijuana for 3 to 4 years in a room approximately 12 feet by 12 feet which is located to the rear of his trailer. Frederic [sic] Gotfried is growing 80 to 120 marijuana plants under four high pressure lights.

"He/She told affiant Frederic [sic] Gotfried moved to the remote area of Monterey County to keep from being detected by aerial overflights with infrared cameras. He/She stated Frederic [sic] Gotfried diverted the electricity prior to the meter, in order to keep the high usage of electricity from being detected. He/She told affiant Frederic [sic] Gotfried has been diverting electricity for over 3 years.

"He/She told affiant Frederic [sic] Gotfried sells his marijuana for $2,800 a pound to his clients in Santa Cruz.

"He/She told affiant Frederic [*sic*] Gotfried has been evicted from the trailer park, and will be moving the marijuana cultivation operation to another location. He/She stated Frederic [*sic*] Gotfried drives a Volvo with the California license number 399VNR, and a Ford Bronco with the California license number 3LQG447.

"9-23-98, 2200 hrs your affiant and Investigator Doug Dahmen drove to vicinity of 70450 Chadwick, Jolon Road, Lockwood at which time we were followed by a Ford Bronco with the California license number 3LQG447 which drove to space #21 and parked. While Investigator Doug Dahmen and affiant driving [*sic*] through the trailer park, the driver of the Bronco confronted affiant and Investigator Doug Dahmen in front of space #21, and questioned us as to our business at the trailer park. We explained we were [looking] for a friend, he told us the subject we were looking for was no longer at the trailer park and should leave due to the fact we were bothering the neighbors. The driver matched the description given by the informant and that in the DMV records.

"Prior to departing the area Investigator Doug Dahmen saw a Volvo with the California license plate number 399VNR parked next to the trailer at space #21.

"Your Affiant checked the criminal history for Frederic [*sic*] Gotfried through the Monterey County Sheriff's Department's record section and found no prior criminal convictions.

"A driver's license check of Frederic [*sic*] Gotfried through the Department of Motor Vehicles showed his address as being 2636 17th Avenue #159 Santa Cruz, with the above two vehicles registered to him at that address.

"Your affiant knows from training and experience that people who grow marijuana indoors, grow it in rotating cycles. Your affiant believes that marijuana is still being grown, and or drying.

"Your affiant knows from my training and experience that growing marijuana indoors requires the use of artificial lighting, and that the majority of indoor marijuana cultivators utilize 400 to 1,000 watt metal halide and/or high pressure sodium lighting systems which produce a significant amount of heat. This heat is then vented from thermal gaps in the structure or it heats up the surface of the entire structure. Most indoor marijuana cultivators utilize heat venting systems to ventilate the heat away from the grow room area. Heat ventilation systems are used to exhaust excessive heat, which is damaging to growing marijuana plants.

"Your affiant knows from training and experience that thermal imaging devices can detect temperature differences indicative of indoor marijuana cultivation in each of the above described instances.

"Declarant requests judicial authorization, as outlined in People v. Deutsch (1996) 44 Cal. App. 4th 1224, for the use of a thermal detection device to detect the differences in the temperature of the heat emanating from the structures on the above described property.

"The thermal imaging device to be used is a passive, non-intrusive system which detects differences in temperature of an object being observed. This system does not send any beams or rays into an area, nor does it enter any structure. The system only detects differences in the surface temperatures of an object. The use of this device for detecting indoor marijuana cultivation is most effective in the early morning or late evening hours when the surface temperature is minimally affected by solar heat loading, and man-made heat sources will be highlighted by a contrasting color with cooler surfaces.

"It is therefore requested that the use of the thermal imaging device be authorized between the hours of 10:00 PM. to 7:00 AM[.]

"Similar thermal imaging devices have been used by public agencies and private industry for other applications such as locating missing persons in a forest, identifying heat inefficient building insulation, detecting overloaded power lines, detecting forest fire lines through smoke, and detecting hot spots in wild fires.

"Declarant does not request any entry be made into the structures or property described above. Nothing will be seized from the property. I request only that law enforcement be authorized to utilize thermal imaging from outside the curtilage of the property to observe the surface temperature of the structures on the property.

"It is declarant's belief, based on the above facts, and your declarant's training and experience, that the use of the thermal imager at 70450 Chadwick, Jolon Road, Lockwood in the County of Monterey, will assist in the investigation of the violation of Section 11358 of the Health and Safety Code, Cultivation of Marijuana."

On September 25, 1998, one day after Garcia obtained the requested search warrant, he used a thermal imaging device on defendant's residence. The device detected a large amount of heat emanating from the rear and side of the mobilehome, while no such heat was detected from neighboring mobilehomes. This information was included in an affidavit in support of a

search warrant sought to search Gotfried, his vehicles, and the premises. The warrant was issued on September 28, 1998.

That same day, officers went to the residence with the warrant and forced entry into the residence when there was no response to their knock and notice. The officers located 106 live, growing marijuana plants, 15 drying marijuana plants, and approximately eight pounds of dry "shake" marijuana. The marijuana was growing under high-pressure lights with a climate control device and circulating fans.

Defendant was charged by complaint filed September 30, 1998, with cultivating marijuana and possessing marijuana for sale. On January 20, 1999, defendant filed a motion to suppress any and all evidence seized pursuant to the searches of his residence on September 25 and 28, 1998, pursuant to the two search warrants. Defendant argued that the information presented to the magistrate to support the first search warrant was insufficient to provide probable cause for the search of his residence by the use of a thermal imaging device, that the good faith exception outlined in *United States v. Leon* (1984) 468 U.S. 897 [104 S.Ct. 3405, 82 L.Ed.2d 677] did not apply, and that the evidence obtained pursuant to the second warrant was the illegal fruit of the first warrant.

The court heard argument on the motion on April 9, 1999, at the time set for the preliminary hearing. On May 5, 1999, the trial court denied the motion to suppress, finding in part that Garcia's actions sufficiently corroborated the information from the informant so that the initial warrant was supported by probable cause. Defendant waived further preliminary hearing and was held to answer on the complaint.

An information was filed August 10, 1999, charging defendant with the same two counts as in the complaint. On October 12, 1999, defendant renewed his motion to suppress evidence. (Pen. Code, § 1538.5, subd. (i).) After a hearing, the court denied the suppression motion on November 10, 1999, stating: "I regard this as a case of first impression in the sense that there is no other case where the police obtained a warrant for the use of a thermal imaging device on something less than probable cause to search the residence, and then use the thermal imaging device, and then obtained a search warrant to search the residence. It's obvious to me that the police never regarded the information that they got from this informant as amounting to probable cause to search the residence. . . . [¶] . . . [T]he objection is that there was no corroboration of this information that was given by the informant, and yet it seems to me that the police did the absolute rational thing having been presented with this information and being aware that the

Deutsch case prohibited them from taking off in their airplane and flying around and zapping homes to see who is and who isn't growing marijuana. [¶] They went and sought the approval of a magistrate to take an intermediate step and that is 'we got some information now. We're not just cruising the neighborhood; we have some information. It's not probable cause to search the place, but we're presenting it. We would like to verify it if we can and corroborate it.' I don't see how they can proceed in a more rational or more fair way. [¶] . . . [T]he warrant was properly issued, and it seems to me that there was no unreasonable searching for information done by means of this thermal imaging technique. It was the reasonable thing to do. . . . [¶] . . . You can't use thermal imaging without some reason to believe that somebody is doing something illegal, and to date you need to have the approval of a magistrate to take that intermediate step. This—this case does not, in my view, violate the Constitution of the United States for [*sic*] the state of California."

The court further ruled that Garcia was acting in good faith when he relied upon the magisterial approval of the use of the thermal imaging technique, so that the good faith exception applied.

After defendant's suppression motion was denied, defendant pleaded no contest to cultivating marijuana, and the charge of possession of marijuana for sale was dismissed. The court placed defendant on three years' probation with various terms and conditions.

## DISCUSSION

■ . " 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]' [Citation.]" (*People v. Weaver* (2001) 26 Cal.4th 876, 924 [111 Cal.Rptr.2d 2, 29 P.3d 103], quoting *People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].)

■ Defendant argues that because probable cause did not support the warrant authorizing the use of the thermal imaging device, evidence was unlawfully seized from his residence and should have been suppressed. Defendant further argues that because Garcia knew or should have known that he did not have probable cause to get the warrant authorizing the use of the thermal imaging device, the good faith exception did not apply.

■ *People v. Deutsch* (1996) 44 Cal.App.4th 1224 [52 Cal.Rptr.2d 366] held that a warrantless scan made with a thermal imaging device of a private

dwelling is an unreasonable search within the meaning of the Fourth Amendment. "To suggest that a thermal scan passes constitutional muster because it is not intrusive becomes a circular argument. The People argue that the thermal scan does not reveal personal, intimate details about what occurs inside the home. Sometimes the argument is made that the imprecision of the scan reveals only heat signatures which lack sufficient clarity to paint images of exactly what inside the house is the source of the heat. In short, the scan cannot distinguish between a marijuana grow room and a hydroponic tomato farm. . . . Precisely because the thermal imager is indiscriminate in registering sources of heat it is an intrusive tool, which tells much about the activities inside the home which may be quite unrelated to any illicit activity. . . . [¶] . . . We find that society recognizes as reasonable an expectation that the heat generated from within a private residence may not be measured by the government without a warrant permitting such a search." (*Id.* at p. 1231.)

More recently the United States Supreme Court considered the constitutionality of using a thermal imaging device to detect indoor marijuana grow operations. In *Kyllo v. United States* (2001) 533 U.S. 27 [121 S.Ct. 2038, 150 L.Ed.2d 94], the police used a thermal imaging device to scan a private residence to determine if the amount of heat emanating from the residence was consistent with the high-intensity lamps used for indoor marijuana growth. The defendant argued that the use of the device constituted an illegal search, in violation of the Fourth Amendment. The court agreed, explaining: "Where, as here, the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant." (*Id.* at p. 40 [121 S.Ct. at p. 2046].)

■ In this case, Garcia obtained a warrant before using the thermal imaging device to scan defendant's residence. Defendant argues that the search still violated the Fourth Amendment because the warrant was not supported by probable cause. The magistrate determined that the warrant was supported by probable cause when he denied the motion to suppress made at the time set for the preliminary hearing. The superior court found that the warrant was not supported by probable cause. ■ Review of probable cause supporting a search warrant is a question of law subject to this court's independent review. (*People v. Camarella* (1991) 54 Cal.3d 592, 601-602 [286 Cal.Rptr. 780, 818 P.2d 63] (*Camarella*).)

■ "Because unverified information from an untested or unreliable informant is ordinarily unreliable, it does not establish probable cause unless it is 'corroborated in essential respects by other facts, sources or circumstances.' [Citations.] For corroboration to be adequate, it must pertain to the

alleged criminal activity; accuracy of information regarding the suspect generally is insufficient. [Citation.] Courts take a dim view of the significance of 'pedestrian facts' such as a suspect's physical description, his residence and his vehicles. [Citation.] However, the corroboration is sufficient if police investigation has uncovered probative indications of criminal activity along the lines suggested by the informant. [Citation.] Even observations of seemingly innocent activity provide sufficient corroboration if the anonymous tip casts the activity in a suspicious light. [Citations.]" (*People v. Johnson* (1990) 220 Cal.App.3d 742, 749 [270 Cal.Rptr. 70].)

 In this case, Garcia failed to directly establish the veracity or basis of knowledge of the anonymous informant, the informant's information as to the alleged criminal activity was not self-verifying, and the record does not suggest that such corroboration could not be obtained. Garcia simply corroborated defendant's residence and vehicles. The People place much emphasis on the fact that defendant's vehicles were registered to an address in Santa Cruz where the anonymous informant indicated that defendant sold his marijuana, and that when Garcia and another officer went to observe defendant's residence, defendant confronted them in a manner which indicated to the officers that defendant was unusually suspicious of strangers in the area. However, this is not sufficient corroboration. Most law-abiding citizens are suspicious of strangers driving around near their residences at night, and the fact that an individual owns a vehicle registered in another city is not probative of a claim that the vehicle owner sells drugs in that other city. Garcia failed to confirm that defendant had previously sold marijuana in Santa Cruz or even that he was diverting electricity prior to the meter. In short, all Garcia had was an uncorroborated tip from an anonymous informant. The search warrant authorizing the use of the thermal imaging device was issued without probable cause.

The People argue that the use of the thermal imaging device was nevertheless conducted in good faith reliance on the search warrant. In *United States v. Leon, supra*, 468 U.S. 897, the Supreme Court held that evidence may not be suppressed if the officer executing the warrant relies in good faith on a warrant issued by a detached and neutral magistrate that later is determined to be invalid. An officer will have no reasonable grounds for believing the warrant was properly issued where the magistrate was misled by information in an affidavit which the officer knew or should have known was false, where the magistrate wholly abandoned his judicial role, where the affidavit was so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable, or when the warrant was so facially deficient that the officer could not reasonably presume it to be valid. (*Id.* at p. 923 [104 S.Ct. at pp. 3420-3421].)

Application of the good faith exception requires a factual presentation of the officers' activity, which is then measured against a standard of objective reasonableness. (*Higgason v. Superior Court* (1985) 170 Cal.App.3d 929, 944 [216 Cal.Rptr. 817].) This objective standard "requires officers to have a reasonable knowledge of what the law prohibits." (*United States v. Leon, supra,* 468 U.S. at p. 920, fn. 20 [104 S.Ct. at p. 3419].) "Any rookie officer knows uncorroborated, unknown tipsters cannot provide probable cause for an arrest or search warrant." (*Higgason v. Superior Court, supra,* 170 Cal.App.3d at p. 952 (conc. opn. of Crosby J.).) ▮▮▮ Garcia, who was a well-trained officer, knew or should have known that the limited corroboration he undertook was insufficient and that the affidavit requesting the search warrant was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " (*United States v. Leon, supra,* 468 U.S. at p. 923 [104 S.Ct. at p. 3421]; see also *People v. Johnson, supra,* 220 Cal.App.3d at pp. 750-751.)

The People argue that at the time of the search, although *People v. Deutsch, supra,* 44 Cal.App.4th 1224 held that a warrant was required to conduct thermal imaging, no case had specified whether the warrant to conduct thermal imaging would have to be based on the same showing of probable cause required to conduct a search of the interior of the residence. The People argue that, given the unsettled law on this issue and the fact that the magistrate found that Garcia's affidavit supported a determination of probable cause, Garcia reasonably relied on the magistrate's warrant. The People cite *Camarella, supra,* 54 Cal.3d 592, in support of this claim.

In *Camarella,* an officer received information from an anonymous informant that the defendant was selling cocaine. The officer conducted additional investigation by checking sheriff's office records and intelligence files and discovered the following. Fifteen months earlier a confidential untested informant told the officer that "Bobby C" was an active dealer in cocaine, that "Bobby C" was working as a bartender at "Pete and Peter's" bar, and that on two occasions within the previous month the informant had purchased cocaine from "Bobby C" at that bar. In addition, the defendant had been arrested three years before for possession of cocaine and "score sheets," or records of controlled substance sales, were on his person at the time of that arrest. The booking sheet for that arrest indicated that the defendant's nickname was "Bobby" and that he worked as a bartender at "Pete and Peter's" bar. When shown the defendant's booking photograph, another officer identified defendant as being the "Bobby" who worked as a bartender at "Pete and Peter's" bar. (*Camarella, supra,* 54 Cal.3d at pp. 597-598.) The magistrate issued the warrant, but the superior court found that the warrant was not supported by probable cause. Nevertheless, that

court declined to exclude seized evidence, concluding that the officer reasonably relied on the warrant. (*Id.* at p. 599.)

Our Supreme Court agreed that the officer reasonably relied on the warrant. "We cannot say that an objective and reasonable officer would have 'known' this affidavit failed to establish probable cause. It is plain from the affidavit that [the officer] conducted more than a mere 'bare bones' investigation [citations]. He obtained substantial corroborating information that, although stale, was sufficient to make the probable cause determination a close question for any objectively reasonable and well-trained officer, and, indeed, for reasonable judicial officers as well [citation]." (*Camarella, supra,* 54 Cal.3d at p. 606.)

In contrast, as we stated above, an objectively reasonable and well-trained officer would have known that the affidavit in this case failed to establish probable cause. In fact, as the superior court found, it is clear that the officer knew that the affidavit he presented did not establish probable cause, but felt that the warrant could issue without a showing of probable cause. The requirement that, "no warrants shall issue, but upon probable cause," (U.S. Const., 4th Amend.) has been the law of this land since at least 1791, when the first 10 amendments to the United States Constitution were ratified. We cannot say that Garcia's reliance on the warrant was reasonable under the circumstances.

As the affidavit in support of the search warrant authorizing the use of the thermal imaging device failed to establish probable cause, and the officer did not reasonably rely on the warrant, the September 25 and September 28, 1998 searches of defendant's residence were unreasonable under the Fourth Amendment and any evidence seized should have been suppressed.

## DISPOSITION

The judgment is reversed.

Rushing, P. J., and Premo, J., concurred.