Filed 10/23/23  P. v. Reeves CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DIANA MARIE REEVES,<br><br>    Defendant and Appellant. | A165395<br><br>(Humboldt County<br>Super. Ct. No. CR2100676) |

Defendant Diana Marie Reeves appeals her conviction on a plea of guilty to a charge of misdemeanor possession of a controlled substance. (Health & Saf. Code, § 11377, subd. (a).)  The sole issue on appeal is whether a magistrate's order denying Reeves's motion to suppress evidence collected pursuant to a search warrant was erroneous.  Reeves contends the warrant, which was based in large part on a tip provided by a confidential informant, was unsupported by probable cause and thus that the fruits of the ensuing search should have been suppressed.  We disagree.  Even assuming the search was constitutionally unreasonable, the remedy of suppression is unavailable because the execution of the warrant was carried out in good faith.  We therefore affirm.

1

# I. BACKGROUND

On February 1, 2021, Detective Nicholas Dalby of the Eureka Police Department sought a warrant to search Reeves's person, residence, and vehicles for evidence of controlled substances and firearms. In the statement of probable cause accompanying the warrant, Dalby reported information from a confidential reliable informant, CR-1, that Reeves sold methamphetamine in the city of Eureka and that she drove a white van. CR-1 personally observed Reeves with methamphetamine. CR-1 had previously provided Dalby with information that had led to multiple cases and arrests "for large amounts of methamphetamine & heroin, firearms, financial crimes and warrant arrests."

While acknowledging that CR-1 provided the information for monetary gain or consideration on pending criminal cases, Dalby reported that CR-1 had "never provided information to [Dalby's] knowledge which has proven to be false." Dalby conducted a records check on Reeves and determined she had prior convictions for carrying a loaded firearm in public in 1993; transporting a controlled substance for sale in 2006; possession of a controlled substance for sale in 2007; possession of a controlled substance in 2008, 2012, and 2013; assault with a deadly weapon in 2013; and possession of a controlled substance while armed in 2016. Dalby also confirmed that Reeves drove a white van that was registered to her.

On January 28, 2021, Dalby surveilled Reeves in an undercover vehicle. Reeves drove to an apartment complex at 1827 Fairfield. Dalby's team had previously executed a search warrant in apartment C of that building, which had led to four individuals being cited for methamphetamine-related crimes. Reeves was at the apartment complex for approximately 10 minutes.

Reeves left the apartment complex and drove to a Walmart parking lot. As she sat in her vehicle, another car parked next to her. A man got out of

2

the car, got into Reeves's van, stayed for less than five minutes, and then got out and left. Dalby recognized the man as Frankie Goree; Dalby had previously executed a search warrant at Goree's house, and Goree was arrested for possession of methamphetamine for sale, felon in possession of a firearm, and possession of a controlled substance while armed.

After Goree left, Reeves met another man that Dalby recognized as Thomas McMahon. McMahon had been cited twice since 2018 for possession of methamphetamine. Reeves and McMahon entered the Walmart together and then returned to Reeves's van. Reeves got in the car and continued speaking with McMahon for about 20 minutes. About halfway through their conversation, McMahon got in the passenger side of Reeves's car for about two minutes, then got back out and continued talking to Reeves. Eventually, McMahon left and Reeves drove home.

Based on Dalby's training and experience, he determined Reeves's behavior was consistent with the sale of controlled substances. Dalby had been a member of the Eureka Police Department for approximately three years and was on the Problem Oriented Policing Team. Dalby had conducted or assisted with investigations of numerous crimes, including those related to controlled substances; had written and served at least 30 search warrants relating to "possession of controlled substances for the purpose of sales, felon in possession of firearms, burglaries and cell phone data"; and had testified as "an expert for sales in the Humboldt County Courthouse."

The magistrate signed the search warrant and a team of police officers, led by Dalby, executed the search warrant on the same day. The execution of the warrant produced a variety of incriminating evidence. Reeves's purse contained a methamphetamine pipe and a sandwich bag containing 6.79 grams of methamphetamine, a usable amount. She had $900 in cash on her person, as well as $600 in her purse. The searching officers found several cell

3

phones in Reeves's car.  At her apartment, they also found a digital scale with a crystalline residue on the weighing portion of the scale.  And in the bedroom, they found additional sandwich bags resembling the ones found in Reeves's purse.

During the search, Reeves admitted to Dalby that she was a methamphetamine user.  She said she used "about a teener a day," an amount consisting of about 1.75 grams.  She claimed to have been trying to get into rehab but had been unable to do so.  She denied selling methamphetamine.  She said she used to sell methamphetamine about five years earlier but had stopped doing so, although she acknowledged people still occasionally messaged her to ask about buying the drug.

On March 2, 2021, the Humboldt County District Attorney filed a felony complaint charging Reeves with a single count of possession for sale of a controlled substance—methamphetamine—in violation of the Health & Safety Code.  (Health & Saf. Code, § 11378.)  Before the preliminary hearing in the case, Reeves moved pursuant to Penal Code section 1538.5, subdivision (m), to quash the February 1, 2021 search warrant obtained by Dalby and to suppress the evidence seized in the ensuing search.

Reeves argued that, because the search warrant application relied on uncorroborated and unreliable information from a confidential informant, it was unsupported by probable cause.  Reeves argued further that the good faith exception to the warrant requirement did not apply because any well-trained officer would have known the search warrant was invalid.  In defense of the validity of the search, the prosecutor argued that probable cause supported the warrant application because it was based not only on information from the confidential informant, but also on the detective's observations of Reeves and her criminal history.  Alternatively, the prosecutor argued, the officers executing the warrant acted in good faith.

4

After hearing argument on the motion, the magistrate determined that the warrant application was based on probable cause.  Rejecting the argument that the statement of probable cause was "skimpy," the magistrate explained, "[Dalby] does follow the person independently.  And the officer is making the observation[s] and reporting them, including looking at criminal records and the like and different contacts were made—drug business and the like.  So I would not be prepared to quash the search warrant.  There's sufficient evidence to support the magistrate's finding, and even independently I think there's probable cause here."

Following the magistrate's ruling, the case proceeded to the preliminary hearing stage, where Reeves was held to answer.  Without renewing her motion to suppress before the trial judge, Reeves subsequently pleaded guilty to simple possession of methamphetamine and was placed on formal probation for a year.  The court issued a certificate of probable cause to appeal the denial of the suppression motion, and this timely appeal followed.

## II. DISCUSSION

At the threshold, the Attorney General argues that, after the magistrate denied the motion to quash, Reeves failed to present the motion again to the trial judge (*People v. Lilienthal* (1978) 22 Cal.3d 891, 896 [preservation of attack on magistrate's grant of warrant application requires renewal of motion to quash before trial judge]), and as a result of that default, she forfeited her ability to challenge its denial on appeal.  (*People v. Hinds* (2003) 108 Cal.App.4th 897, 900 (*Hinds*).)  According to the Attorney General, "it would be wholly inappropriate to reverse a superior court's judgment for error it did not commit and that was never called to its attention."  (*Lilienthal*, at p. 896, fn. omitted.)

5

We reject the argument.  True, in *Hinds*, as in this case, the conviction was on a plea of guilty, but in that case there was no certificate of probable cause to appeal the suppression issue.  Here, it cannot be said that "the availability of the plea bargain accepted by the defendant may have been dependent upon not further pursuing the suppression motion" (*Hinds, supra,* 108 Cal.App.4th at p. 902), which is what counseled in favor of deferring the suppression issue in *Hinds* to a habeas corpus proceeding.  (*Id.* at p. 901 ["Unless the record affirmatively discloses that counsel had no tactical purpose for his act or omission, 'the conviction will be affirmed and the defendant relegated to habeas corpus proceedings at which evidence dehors the record may be taken to determine the basis, if any, for counsel's conduct or omission.' "].)  A failure to preserve a Fourth Amendment claim for appeal will not necessarily preclude appellate review if the defendant argues her trial counsel was constitutionally ineffective for failing to raise it.  (See *People v. Terrell* (1999) 69 Cal.App.4th 1246, 1252–1254.)  Reeves makes such an argument here.  Thus, her certificate of probable cause permits us to consider her constitutional attack on the magistrate's denial of the suppression motion.  (*People v. Richardson* (2007) 156 Cal.App.4th 574, 596 [where a defendant has pled guilty or no contest, the defendant may properly bring an ineffective assistance of counsel claim on appeal, based on trial counsel's failure to renew a suppression motion, when the defendant has obtained a certificate of probable cause].)

To prevail on a claim of ineffective assistance of counsel, a defendant must prove that:  (1) counsel's performance fell below the prevailing professional norms; and (2) that it is reasonably probable a more favorable outcome would have resulted but for counsel's failings.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Williams* (1997) 16 Cal.4th 153, 257.)  "[I]f the record sheds no light on why counsel acted or failed to act

6

in the challenged manner, we must reject the claim on appeal unless counsel was asked for an explanation and failed to provide one, or there could be no satisfactory explanation for counsel's performance." (*People v. Castillo* (1997) 16 Cal.4th 1009, 1015.) We presume " 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. Defendant thus bears the burden of establishing constitutionally inadequate assistance of counsel.' " (*People v. Carter* (2005) 36 Cal.4th 1114, 1189.) "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland*, at p. 697.) The determination of whether counsel was constitutionally ineffective for failing to renew a suppression motion, in turn, requires us to consider the merits of the Fourth Amendment argument (*People v. Hart* (1999) 74 Cal.App.4th 479, 487), since if her constitutional claim lack merit, she cannot meet the prejudice prong of the test for ineffective assistance of counsel.

Turning to Reeves's constitutional argument, we begin with fundamentals. The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (U.S. Const., 4th Amend.) State law provides the same protection. (See Cal. Const., art. I, § 13; Pen. Code, § 1525.) Procedurally, a defendant may move to suppress evidence obtained as the result of a search warrant unsupported by probable cause. (Pen. Code, § 1538.5, subd. (a)(1)(B)(iii).) When such a motion is made, " '[b]ecause a search conducted pursuant to a search warrant is presumed lawful, the burden of establishing the invalidity of the search warrant rests upon the defendant.' " (*People v. Rowland* (2022) 82 Cal.App.5th 1099, 1111.) And

even where that burden is carried, and a constitutionally unreasonable search is established, "section 28(d) [of the California Constitution] . . . mandates admission of unlawfully seized evidence unless exclusion is required by the Fourth Amendment exclusionary rule as defined by the United States Supreme Court." (*In re Lance W.* (1985) 37 Cal.3d 873, 884.)

We must therefore look to the principles the high court has laid down in this area, as viewed through the opinions of our own Supreme Court. " '[T]he question facing a reviewing court asked to determine whether probable cause supported the issuance of the warrant is whether the magistrate had a substantial basis for concluding a fair probability existed that a search would uncover wrongdoing.' " (*People v. Westerfield* (2019) 6 Cal.5th 632, 659; see *Illinois v. Gates* (1983) 462 U.S. 213, 238–239 (*Gates*).) There is no " ' "precise definition or quantification" ' " of probable cause. (*Westerfield*, at p. 659.) The standard is " ' "less than a preponderance of the evidence or even a prima facie case." ' " (*Ibid.*) In applying that standard, " ' "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." ' " (*Ibid.*) And on appeal, " 'The magistrate's determination of probable cause is entitled to deferential review.' " (*Ibid.*; see *Gates*, at p. 236 ["A magistrate's 'determination of probable cause should be paid great deference by reviewing courts' "].)

In this case, the parties debate at length whether the search warrant application by Dalby was supported in sufficient detail to justify a determination of probable cause. Reeves argues the tip provided by CR-1 was conclusory, lacked any foundation in observed detail, and was ultimately based on nothing more than her criminal history and her association with others having criminal histories. She points out that any warrant application

8

resting on a confidential informant's tip is inherently suspect; that the government bears a heavy burden to justify a probable cause determination based on such a tip; and that, to the extent Dalby reported suspicious circumstances based on his own knowledge and investigation, the inferences he drew from those circumstances here are just as consistent with innocent behavior as they are with incriminating behavior.  The Attorney General, on the other hand, claims the informant's tip, together with the circumstances reported independently of that tip, justified a reasonable inference that Reeves had committed and may have been continuing to engage in illegal drug possession or drug trafficking.

Assuming arguendo Reeves is correct that the showing made in support of the warrant application at issue failed to supply probable cause, we will resolve this appeal on the issue of good faith.  "The fact that a Fourth Amendment violation occurred—*i.e.,* that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." (*Herring v. United States* (2009) 555 U.S. 135, 140 (*Herring*); see *United States v. Leon* (1984) 468 U.S. 897, 922 (*Leon*).)  "When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." (*Herring*, at p. 142; *Leon*, at p. 922.)  As pertinent here, the governing test "is whether a reasonable and well-trained officer 'would have *known* that his affidavit failed to establish probable cause and that he should not have applied for the warrant.' [Citation.]  But if such an officer would not reasonably have known that his affidavit (and any other supporting evidence) failed to establish probable cause, there is no reason to apply the exclusionary rule, because there has been no objectively unreasonable police conduct requiring deterrence." (*People v. Camarella* (1991) 54 Cal.3d 592, 605–606 (*Camarella*).)

Under *Leon*, as further applied and refined in *Herring*, we conclude that the objective good faith test is satisfied on this record. The warrant affidavit was supported only in part by information from a confidential informant. Courts assess whether an informant's tip is adequately corroborated under a totality of the circumstances analysis. (*Gates*, *supra*, 462 U.S. at pp. 232–233.) The informant's "reliability," "veracity," and "basis of knowledge" are "all highly relevant," but they are not separate and independent requirements. (*Id.* at pp. 230, 233.) To that end, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." (*Id.* at p. 233.) A common way to corroborate an informant's tip, which was followed here, is through independent investigation: As the high court explained in *Gates*, "Our decisions applying the totality-of-the-circumstances analysis outlined above have consistently recognized the value of corroboration of details of an informant's tip by independent police work." (*Id.* at p. 243.)

Nothing on this record suggests the kind of "flagrant" misconduct or recklessness that fails to meet the *Leon* test of objectively reasonable good faith. (*Herring, supra,* 155 U.S. at pp. 144–147.) Dalby received information from CR-1 that Reeves sold methamphetamine and drove a white van. CR-1 had personally observed defendant with methamphetamine. Dalby had reason to believe CR-1 because CR-1 had previously provided Dalby with information that had led to multiple arrests in narcotics and other cases and, to Dalby's knowledge, had never provided information that was false. Dalby thus used the tip as a starting point for his investigation; the tip itself did not provide the whole of the probable cause for the warrant. He confirmed the "pedestrian fact" (see *People v. French* (2011) 201 Cal.App.4th 1307, 1320) that defendant drove a white van that was registered in her name. He also

ran a records check and found defendant's criminal history, which included six drug-related offenses dating back to 2006, with the most recent offense being in 2016. "A suspect's narcotics arrest record is relevant to the magistrate's determination of probable cause." (*People v. Kershaw* (1983) 147 Cal.App.3d 750, 760.)

"It is plain from the affidavit that [Dalby] conducted more than a mere 'bare bones' investigation." (*Camarella, supra*, 54 Cal.3d at p. 606.) Reeves contends that Dalby's investigation was insufficient, but the question "is not whether further investigation would have been reasonable." (*Ibid*.) Rather, the question is "whether a reasonable officer in [Dalby's] position would have known that the affidavit, as it existed at the time it was to be presented to the magistrate, was legally insufficient without additional and more recent corroboration." (*Ibid.,* italics omitted.) To be sure, where a well-trained officer can be charged with knowledge that an independent investigation corroborating an anonymous tip was itself improper under settled law (e.g., *People v. Gotfried* (2003) 107 Cal.App.4th 254, 266 [warrantless thermal imaging surveillance used to detect and confirm indoor marijuana growing reported by tipster, where that method of surveillance had been held illegal under settled case law]), a warrant application resting on such an investigation will fail the *Leon* test. That is nothing more than common sense. Patently illegal investigatory techniques cannot be leveraged into probable cause by using them to corroborate confidential tips that would not themselves supply probable cause. But there is nothing even remotely problematic about the independent investigatory steps taken here. CR-1 had a track record of accuracy. (*People v. Terrones* (1989) 212 Cal.App.3d 139, 146 [" 'If the informant has provided accurate information on past occasions, he may be presumed trustworthy on subsequent occasions.' "].) And Dalby did enough cross-checking of his own to " 'make the probable cause

11

determination a close question for any objectively reasonable and well-trained officer, and, indeed, for reasonable judicial officers as well.' " (*Gotfried*, at p. 266.)

Ultimately, to resolve this appeal, we need determine no more than that the question of probable cause is fairly debatable on the record presented. Because, under the good faith rule of *Leon*, the challenged evidence would not have been subject to suppression even assuming the showing of probable cause was deficient, Reeves cannot establish that her counsel's failure to renew the suppression motion caused her any prejudice. Her claim of ineffective assistance of counsel therefore fails, and perforce her Fourth Amendment fails with it.

### III. DISPOSITION

Affirmed.

STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
HIRAMOTO, J.*

---

\* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.