COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges AtLee and Bernhard
Argued at Lexington, Virginia


SHELLY HAMM, S/K/A SHELLY ANN HAMM

                                                   OPINION BY

v.      Record No. 1183-24-3         CHIEF JUDGE MARLA GRAFF DECKER
                                                 JULY 1, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PATRICK COUNTY
Marcus A. Brinks, Judge

Samantha Offutt Thames, Senior Appellate Counsel (Virginia
Indigent Defense Commission, on briefs), for appellant.

Susan Hallie Hovey-Murray, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Shelly Hamm entered a conditional plea of guilty to possessing methamphetamine in

violation of Code § 18.2-250 after the circuit court denied her motion to suppress evidence. Hamm

argues that the evidence should have been suppressed because it was obtained from a search

conducted pursuant to a warrant that was overbroad. We hold the search was reasonable under the

warrant and affirm the circuit court's ruling.

BACKGROUND[1]

Based on information from a confidential informant that he had seen a large quantity of

methamphetamine, empty baggies, and a firearm at Walter Trent's house in Patrick County,

---

[1] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018) (per curiam)).

sheriff's deputies obtained a search warrant for the "single-family residence" at "1221 Spring Rd., Patrick Springs, V[irgini]a." The record does not make clear whether Trent owned the house, but the informant stated that Trent "resid[ed] in the lower level." An address check conducted by the affiant investigator using "a reputable law enforcement only website" confirmed that Trent lived at "1221 Spring Rd," with no apartment or unit number listed. The warrant authorized a search of the house at that address for drugs, packaging materials, paraphernalia, and firearms. It also included computer, phone, and bank records, as well as computer hard drives and storage media. Hamm was not mentioned in the affidavit or warrant.

When the deputies arrived at the residence to execute the warrant, they observed a basement with a separate entrance door, but they saw no indication the house was anything but a single-family residence. There were no separate unit numbers on the house indicating multiple residences, and there was only one mailbox. The deputies found Trent on the main level of the house, which contained a kitchen, dining area, living room, and a hallway that led to several bedrooms. Other than the hallway, nothing separated the bedrooms from the common kitchen and dining areas.

According to Patrick County Sheriff's Investigator Brian Hubbard, the basement area "looked more like a garage . . . [w]ith stuff piled in it." He saw a bed and a small table but did not recall seeing an oven. Hubbard said that there "may have been a bathroom" but he did not believe there was a shower. Interior stairs connected the basement and the main level of the house. The only thing separating the basement from the rest of the house was a door, and the officer did not recall a special lock or deadbolt on the door.

While searching the main level of the house where they had found Trent, the deputies entered one of the bedrooms. The bedroom did not have its own bathroom or separate living space. It had a "standard residential doorknob[]" and no chain or slide lock on the inside of the door. The door could be closed, but no evidence indicated whether it was open or closed when the deputies

- 2 -

entered the bedroom. According to Investigator Hubbard, Hamm was not in the room's bed at the time of the search, and he also did "[n]ot . . . recall" her being in the room when they initially entered to conduct the search.[2] Inside the bedroom, the officers found drug residue and paraphernalia in a wooden box and 0.332 gram of methamphetamine in a purse, along with Virginia identification bearing Hamm's name.

Hamm moved to suppress the evidence under both the United States and Virginia Constitutions, contending that the search warrant was overbroad and deputies were not authorized to search her bedroom and purse. She argued that the home was a multiple-occupancy building and that the deputies had no basis to search beyond the basement where the informant said Trent resided.

The circuit court denied Hamm's motion. The court concluded that the place to be searched was a "single-family residence" and that Trent had free access to the entire home. The court reasoned it was a "fair inference" that Trent could have secreted drugs anywhere in the residence.

---

[2] When the prosecutor later summarized the evidence supporting Hamm's conditional guilty plea, he stated in part that Hamm was "found in a bedroom on the first floor inside the residence," and defense counsel agreed that the prosecutor had provided a "[f]air summary" of the evidence. The appellate court, however, "will not consider the prosecutor's proffer in response to H[amm]'s guilty plea" as a basis for "'revers[ing] . . . an [allegedly] erroneous pretrial ruling'" "because [she] did not renew h[er] motion to suppress at that time, and thus, the [circuit] court had no occasion to reconsider its prior ruling" in light of the additional fact. *See Hill v. Commonwealth*, 297 Va. 804, 807-09 & n.1 (2019) (quoting *Commonwealth v. White*, 293 Va. 411, 414 n.2 (2017)) (applying this principle in the context of a conditional guilty plea); *see also id.* at 808 (recognizing that "[w]hen considering whether to *affirm* the denial of a pretrial suppression motion," by contrast, the "appellate court . . . also [reviews] the evidence later presented at trial" (emphasis added) (quoting *White*, 293 Va. at 414)). So we view the facts as presented at the suppression hearing, along with additional facts in the plea proffer favoring the Commonwealth.

The court further observed that the room in which Hamm's purse and drugs were found was not secured in any way against Trent.[3]

Hamm entered a conditional guilty plea to the indictment for possession of methamphetamine, preserving her right to appeal the denial of the suppression motion. The court sentenced her to one year of imprisonment, all suspended, and one year of probation.

ANALYSIS

Hamm argues that the circuit court erred by not suppressing the evidence from the search of "[her] bedroom" and purse because the warrant and resulting search were impermissibly broad. She contends that the deputies should have limited their search to Trent's basement area.

I. Standard of Review

This Court considers "the evidence in the light most favorable to the Commonwealth" when reviewing the circuit court's denial of a motion to suppress. *Ray v. Commonwealth*, 74 Va. App. 291, 302 (2022) (quoting *Jones v. Commonwealth*, 71 Va. App. 375, 380 (2019)). The Court "give[s] deference to the [circuit] court's factual findings and review[s] *de novo* the application of law to those facts." *Id.* (quoting *Joyce v. Commonwealth*, 72 Va. App. 9, 14 (2020)). The instant search was executed pursuant to a warrant. "A judicially issued search warrant is entitled to a 'presumption of validity,' and a defendant challenging a resulting search bears the burden of rebutting that presumption." *Harvey v. Commonwealth*, 76 Va. App. 436, 461 (2023) (quoting *Brown v. Commonwealth*, 68 Va. App. 517, 524 (2018)). "This deferential standard 'is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant.'" *Taylor v. Commonwealth*, 66 Va. App. 619, 631 (2016) (quoting *Anzualda v. Commonwealth*, 44 Va. App. 764, 775 (2005) (en banc)). And as a result, "the resolution of

---

[3] The court additionally noted that there was no sign on the bedroom door "saying keep out[,] this is Shelly Hamm's residence." Also, the court did not make a finding that Hamm lived there, observing only that "she may have been living there."

- 4 -

doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). This well-established law provides the lens through which we view Hamm's challenge.

## II. Constitutionality of the Search of the Bedroom and Hamm's Purse

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. To be valid, a search warrant must describe the place to be searched with particularity. *Id.*; *see Wilson v. Commonwealth*, 16 Va. App. 213, 217 (1993). Virginia's Constitution provides the same protections. *See Rowley v. Commonwealth*, 48 Va. App. 181, 187 n.2 (2006). "All that is required, however, is that the description be such that the officer charged with executing the search warrant can, with reasonable effort, ascertain and identify the place intended." *Wilson*, 16 Va. App. at 217; *see Jeffers v. Commonwealth*, 62 Va. App. 151, 156 (2013) ("Police officers executing a particularized search warrant need not read its scope either narrowly or broadly, only reasonably."). The constitutionality of the search here begins and ends with the significance of the layout of the house in the context of the language of the search warrant and affidavit.

As a general rule, "a search warrant directed against a multiple-occupancy structure is invalid if it fails to describe the particular sub-unit to be searched." *Wilson*, 16 Va. App. at 217. Hamm argues that the warrant did not properly authorize the search of what she characterizes as her bedroom. This is so, she contends, because it did not specifically describe her bedroom, a sub-unit within a single-family home, as a separate identified area to be searched.[4] But the evidence, viewed under the proper standard, established that the bedroom Hamm describes as

---

[4] In essence, Hamm argues that while the house was a single-family residence rather than a multiple-occupancy building, the police knew it had separate living spaces. As a result, she contends that multi-occupancy principles applied, requiring the search warrant to specifically authorize a search of her particular bedroom.

hers was not an independent sub-unit of the house. She and Trent did not have separate living spaces within the single structure. Hamm presumably occupied a bedroom on the main level of the house while his bedroom was in the basement. Assuming she lived there, they necessarily shared access to the kitchen, dining area, and living room on the main floor. And each had access to the other's bedroom due to an absence of external locks on the bedroom doors and the door to the basement.

The decision in *Poyner v. Commonwealth*, 229 Va. 401 (1985), is instructive. In *Poyner*, the Supreme Court upheld the validity of a search of the room Poyner rented in a private house even though the search warrant gave only the address of the house. *Id.* at 411. The Court determined that Poyner had access to the entire house, which had "only one bathroom, one kitchen, and one living room." *Id*. at 411-12. On that basis, the Court held that the warrant's description of the house rather than Poyner's room was sufficient to authorize the search of the room. *Id.* The Court distinguished the case from *Manley v. Commonwealth*, 211 Va. 146 (1970), and *Brown v. Commonwealth*, 212 Va. 672 (1972) (per curiam), in which each defendant lived in an individual, self-contained apartment in a multiple-occupancy building.[5] *Poyner*, 229 Va. at 412. It held that those cases simply "ha[d] no application." *Id.*

As in *Poyner*, the instant warrant authorized the search of the entire house. And the record shows that the house was, in fact, a single-family residence rather than a "multiple[-]occupancy structure." *See id.* Consistent with the evidence, the affidavit indicated that Trent lived there. Although the affidavit acknowledged that he "resid[ed o]n the lower level," nothing in the record suggests that the structure was anything but a single-family residence. No unit numbers delineated separate residences, and the building had only one mailbox. No evidence proved that the door

---

[5] Even in *Manley*, 211 Va. at 151-52, and *Brown*, 212 Va. at 674, the Supreme Court held that under the specific facts of each case, the search warrant sufficiently described the place to be searched.

- 6 -

between the basement stairway and the main level had a lock on it. And in any event, when the deputies arrived, they found Trent on the main level of the house where the shared common areas of the kitchen and living room were located. As the circuit court found, this fact showed that Trent had freedom of movement in the house beyond the basement. Additionally, the door to the first-floor bedroom at issue had no deadbolt or chain lock, making it similarly readily accessible to Trent. That the basement had a separate entrance is not dispositive, as many single-family homes have front, back, side, and basement entrance doors. Apparently, Hamm occupied a bedroom in the same house that Trent occupied, and as in *Poyner*, the evidence proved that Trent had physical access to the entire house. *See id.* at 411-12; 2 Wayne R. LaFave, *Search and Seizure* § 4.5(b), at 725-26 & n.85 (6th ed. 2020) (relying in part on *Poyner*, 229 Va. at 411-12, describing this as a "community-occupation situation"—as opposed to independent, self-contained living quarters like apartments—and recognizing the general rule in such circumstances that "a single warrant describing the entire premises . . . justif[ies a] search of the entire premises"[6]).

On the record before us, Hamm's status with regard to the house is unclear. What is clear is that Hamm's purse was in a bedroom in the single-family home in which Trent lived. Because the bedroom in which Hamm's purse was found was not a separate apartment within the building or a separate identified living unit, the search of the bedroom and her purse fell within the scope of the warrant to search the house. *See Poyner*, 229 Va. at 411-12; *United States v. Ross*, 456 U.S. 798,

---

[6] Other jurisdictions apply this well-recognized general rule. *See* 2 LaFave, *supra*, at 725-26 & n.85; *see also, e.g.*, *State v. Taylor*, 862 N.W.2d 801, 803-04, 807-09 (N.D. 2015) (where police had a warrant for a single-family residence because an occupant was selling drugs, upholding the search of the bedroom of another occupant where the bedroom door was open and there was no visible way to exclude others from it); *Commonwealth v. Turpin*, 216 A.3d 1055, 1058-59, 1065 (Pa. 2019) (upholding the search of an entire single-family townhouse pursuant to a warrant because the unnamed defendant's bedroom was "open and unlocked" and there was no "padlock," "separate room number[,] or mailbox"). *But see State v. Fleming*, 790 N.W.2d 560, 566-68 (Iowa 2010) (rejecting the "community-living exception" and holding under the state constitution that the homeowner's *tenant* had a reasonable expectation of privacy in his *rented* room even though it was not clearly marked with a lock or sign).

821 (1982) (recognizing that a warrant authorizing the search of a home for contraband permits opening closets, drawers, and containers "in which the [contraband] might be found"), *cited with approval in Glenn v. Commonwealth*, 275 Va. 123, 131 (2008) (applying container-search principles during a warrantless premises search); *People v. Webb*, 325 P.3d 566, 568-70 (Colo. 2014) (ruling that a warrant for the residence of a mother and her adult son, a parolee, permitted a search of the mother's bedroom, including her purse, because the suspect son "had access").

Moreover, it is clear the search warrant was valid when issued, and nothing that the deputies learned while executing the warrant changed that understanding. The holding in *Maryland v. Garrison*, 480 U.S. 79 (1987), informs this analysis. In *Garrison*, a search warrant was issued for a third-floor apartment occupied by an individual named McWebb. *Id.* at 80. The officers who obtained and executed the warrant reasonably believed that there was only one apartment on the third floor. *Id.* at 81. When officers opened the locked door to the third floor using McWebb's key, Garrison was in the hallway. *Id.* The officers saw the interiors of two units through the open doors, but it was not immediately apparent that these were two separate apartments, and neither McWebb nor Garrison informed them of that fact. *Id.* at 81 & n.2. Not knowing they were in Garrison's apartment instead of McWebb's, the officers began searching and found drugs. *Id.* They stopped the search when they realized the two apartments were separate residences. *Id.* The Supreme Court rejected Garrison's argument that the recovered evidence should have been suppressed. *Id.* at 85-86. Because the warrant was valid when issued, the fact that it turned out to be unnecessarily broad did not retroactively invalidate it. *Id.* The Court held that no Fourth Amendment violation occurred because the officers reasonably thought that McWebb's apartment comprised the entire third floor and, therefore, that the warrant permitted them to search the entire third-floor area. *Id.* at 88-89.

Similarly, in Hamm's case, the deputies reasonably believed the warrant authorized a search of the entire "single-family residence." But unlike in *Garrison*, nothing occurred during the search to disabuse them of the belief that the home was a single-family residence. The affidavit noted that Trent lived in the basement and possessed a large quantity of methamphetamine and items associated with drug distribution. Trent was found on the main floor of the house. Investigator Hubbard testified that in his training and experience as a narcotics officer, drug dealers routinely hid their drugs and related paraphernalia in "multiple locations" in a residence. *See generally United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991) (upholding the search of the bedroom of a drug dealer's father in their shared residence because "[t]he most obvious place . . . to search would be the drug dealer's bedroom" so "any other portion of the house would be a more secure hiding place"). As the circuit court determined, it was a "fair inference" that Trent could have secreted drugs throughout the house. Accordingly, the warrant reasonably authorized a search of the entire house for drugs and related items.

Hamm argues that the deputies should have known that the bedroom she contends was hers was separate from Trent's basement area and stopped their search before entering it. But unlike the two individual apartments in *Garrison*, Hamm's bedroom was not a separate unit within the house. Nothing about the first-floor bedroom distinguished it as a discrete area that was not accessible to Trent or subject to search under the warrant.

"Search warrants are not directed at persons[. Instead,] they authorize the search of '[places]' and the seizure of things." *Jeffers*, 62 Va. App. at 157 (second alteration in original) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 (1978)). Here, upon arriving at the house to execute the search warrant and finding Trent on the main level, the deputies reasonably concluded they were in a single-family residence as noted in the warrant. The Fourth

Amendment requires only that "the officers' interpretation [of the warrant is] 'consistent with a reasonable effort to ascertain and identify the place intended to be searched.'" *Id.* at 156 (quoting *Garrison*, 480 U.S. at 88). In this case, the deputies reasonably acted on the facts before them, and their conduct did not violate the Fourth Amendment. *See id.* at 155-58 (holding a premises warrant that included outbuildings permitted the search of a barn where the defendant lived, even though he was not named in the warrant).

Finally, Hamm argues that the deputies should not have searched her person merely because she was in the home. But the deputies did not search Hamm's person. Rather, they searched an unattended purse after they found it in a bedroom with ordinary residential doorknobs, from which no evidence indicated others in the residence could be excluded. Acting under a warrant that authorized a search of the single-family house for drugs, the deputies reasonably searched the purse pursuant to the warrant. *See Ross*, 456 U.S. at 821.

CONCLUSION

For these reasons, we affirm the court's denial of Hamm's motion to suppress.[7] We remand to the circuit court solely for the correction of clerical errors in the conviction and sentencing orders.[8]

*Affirmed and remanded.*

---

[7] We do not address the issue of good faith because we conclude that the search of the bedroom and Hamm's purse did not violate the Fourth Amendment. *See Jeffers*, 62 Va. App. at 160 n.2 (upholding a search conducted pursuant to a warrant on the merits and declining to consider application of the good-faith exception); *Sanders v. Commonwealth*, 64 Va. App. 734, 742 n.3 (2015) (concluding that a ruling that the challenged activity was not a search provided the best and narrowest ground for decision and not conducting a good-faith analysis).

[8] The February 5, 2024 transcript makes clear that Hamm's guilty plea was conditional, preserving her right to appeal the suppression issue. The conviction and sentencing orders, however, do not reflect this fact. The Commonwealth confirms that the plea was conditional and does not oppose Hamm's request to remand for correction of these orders to reflect the conditional nature of the plea. *See* Code § 8.01-428(B); *Stevens v. Commonwealth*, 72 Va. App. 546, 560 n.5 (2020).